HENRY COIT AND ANOTHER *vs*. HENRY P. HAVEN AND OTHERS.

A judgment rendered by a court of general jurisdiction in this state can not be attacked collaterally, unless the want of jurisdiction appear upon the face of the record.   Where the want of jurisdiction so appears it is a nullity.

Jurisdictional facts, such as the service of the writ, and the like, are conclusively presumed in favor of such a judgment unless the record shows the contrary.

This rule does not apply to foreign judgments of the same character.   The principal reason for the distinction is that a foreign judgment can not be reached by our citizens, for the purpose of reversing it by regular proceedings, without going into the foreign jurisdiction for the purpose.

And the same presumption does not exist in favor of domestic judgments of courts of limited or special jurisdiction.

The rule which thus protects the judgments of domestic courts of general jurisdiction, may sometimes, in its application, work injustice in particular cases, but on the whole it is the only safe rule, and the public good requires it.

Where the rule would work injustice, the party affected by the judgment can bring a writ of error to reverse it, or apply for a new trial, and he may also in cases of emergency, or where there is special reason for equitable interference, obtain the aid of a court of equity.

In an action of *scire facias* the garnishees have no right to attack the original judgment beyond that which the original defendant would have.

And where the garnishees, under a provision of the statute with regard to foreign attachment, had cited in to defend certain parties who claimed the debt attached, under an assignment from the original defendant made after the attachment, and such parties had assumed the defense, it was held that they had no right to attack the original judgment beyond that which the original defendant would have had.

SCIRE FACIAS, against the defendants as debtors of one Calvin Durand, described in the original writ and judgment as of the town of Milford in this state.   John Maxwell and

John Hart claimed to be entitled to the debt originally due from the garnishees to Durand by an assignment of the same to them by Durand ; and the garnishees, under the provision of the statute with regard to foreign attachments, (Rev. Stat., tit. 1, sec. 234,) had cited them in to assume the defense of the case, and they had appeared, and were defending in the name of the garnishees.

The defendants pleaded in bar that the writ, in the original action against Durand, in which the judgment was rendered on which the present suit was brought, " was never duly served upon him, and that no service of the writ was ever made upon him by the officer who undertook to serve the same, except a pretended service on the 22d day of July, 1859, by leaving a copy of the writ at the dwelling house of one Francis Trowbridge, in the town of Milford, in the county of New Haven and state of Connecticut, and not at any usual place of abode of the said Durand, in Milford, or elsewhere in the state of Connecticut ; and that the said Durand, at the time of such pretended service, was not an inhabitant of the town of Milford, or a resident therein, or of the state of Connecticut, and had not any usual place of abode at the dwelling house of the said Trowbridge or elsewhere in the state, but at the time of such pretended service was, and ever since had been, an inhabitant and resident of the city of New York, in the county and state of New York ; and that the said Durand never appeared in the suit, or answered to or defended the same ; and that therefore said pretended judgment in the plaintiffs' declaration mentioned, was null and void, and of no force, validity or effect."

The defendants also pleaded the general issue, and issue was closed to the court upon both pleas, and the case was tried in the superior court before *Butler, J.*

On the trial the plaintiffs offered in evidence the record of the judgment against Durand in the original suit. By this it appeared that Durand was described in the writ in that action as " of the town of Milford in New Haven county in said state of Connecticut," and that the officer's return of service upon him was as follows :—" And on the 22d day of July, 1859, I

left at the usual place of abode of the said defendant, in the town of Milford, in New Haven county, in said state, a like true and attested copy of said writ, and of my return thereon, describing the estate attached. Attest, F. W. Fitch, Sheriff's Deputy." And the entry of the judgment upon the record was as follows:—" At a superior court held at New Haven, within and for New Haven county, on the 1st Tuesday of September, A. D. 1859: Present, Hon. Loren P. Waldo, Judge: Henry Coit and William E. Bunker, both of the city, county and state of New York, plaintiffs, *vs.* Calvin Durand, of Milford, in New Haven county, defendant: Henry P. Haven, Charles Prentiss, and Thomas W. Perkins, all of New London, in New London county, garnishees: In an action or plea of the case demanding \$3,300 damages, by writ on file dated the 13th day of June, 1859. This action came to the present term of this court, when the plaintiffs appeared, but the defendant and garnishees being called appeared not. It is therefore considered by the court that the plaintiffs recover of the defendant \$3,054$\frac{49}{100}$ damages, and costs taxed at \$22$\frac{49}{100}$."

Upon the introduction of this record the defendants, for the purpose of showing that the judgment was not a valid one, but wholly void, offered the testimony of Durand himself and of others, to prove that at the time when the copy of the writ was claimed to have been left in service by the officer, he was not an inhabitant of or resident in the town of Milford, or any other place in the state of Connecticut, and that the writ was never in any way served upon him, and that at the time of the supposed service he was an inhabitant of, and resident and domiciled in, the city of New York. This testimony was objected to by the plaintiffs and was excluded by the court, and judgment was rendered for the plaintiffs.

The defendants thereupon moved for a new trial on the ground of the exclusion of this evidence.

*Dutton* and *Bristol,* in support of the motion.

A judgment can not bind the defendant personally unless he was duly served with process or appeared in the suit. This rule is of universal application and is founded on the princi-

ples of natural justice.  *Robson* v. *Eaton*, 1 T. R., 62.  1st. In the case of domestic judgments, rendered by courts of general jurisdiction :—Where the defendant was sued in debt on judgment, and the plaintiff introduced the record of a judgment of the common pleas, by which it appeared that the plaintiff appeared by his attorney, the defendant was permitted to show that the attorney who appeared was not his attorney in fact.  *Robson* v. *Eaton*, supra.  *Fisher* v. *Lane*, 3 Wilson, 303.  *Tipton* v. *Mayfield*, 10 La., 189.  *Flynn* v. *Rhodes*, 12 La. Ann. R., 239.  In an action of ejectment, where it appeared by the record in a former case that an attorney appeared for two defendants, one of them was permitted to prove that he never authorized such appearance.  *Rider* v. *Alexander*, 1 D. Chip., 267.  In this case the court say : "It appears that the principal debtor had absconded, and did not reside in this state at the time when the suit was commenced or at any time while it was pending in court, that he had no personal notice of the suit, and did not appear, and that a judgment was taken against him by default.  This renders the judgment as perfect a nullity as if it had been rendered without any antecedent process.  It follows that all proceedings had under that judgment are void."  *Denning* v. *Corwin*, 11 Wend., 647. *Gallatan* v. *Cunningham*, 8 Cowen, 370.  *Jackson* v. *Antell*, 3 Johns., 459.  *Mills* v. *Martin*, 19 id., 33.  2d. The same principle is applied to judgments of the courts of sister states, to which by the constitution full faith and credit is to be given. *Aldrich* v. *Kinney*, 4 Conn., 380.  "To bind a defendant personally by a judgment, when he was never personally summoned, nor had notice of the proceedings, is contrary to the first principles of justice."  Per Thompson, Ch. J., in *Borden* v. *Fitch*, 15 Johns., 141.  *Kibbe* v. *Kibbe*, Kirby, 119.  *Dennison* v. *Hyde*, 6 Conn., 508.  *Wood* v. *Watkinson*, 17 id., 500, 504.  *Noyes* v. *Butler*, 6 Barb., 613, 616.  *Shumway* v. *Stillman*, 4 Cowen, 296.  *Starbuck* v. *Murray*, 5 Wend., 158. *Bissell* v. *Briggs*, 9 Mass., 462.  *Piquet* v. *Swan*, 5 Mason, 35, 42.  *Hall* v. *Williams*, 6 Pick., 232.  *McClenachan* v. *McCarty*, 1 Dallas, 375.  3d. The same principle is applied to courts of limited jurisdiction.  *Marshalsea case*, 10 Coke,

76. *Perkin* v. *Procter*, 2 Wilson, 382. *Pierce* v. *Atwood*, 13 Mass., 324, 342. *Percival* v. *Jones*, 2 Johns. Cas., 40. *Hubbard* v. *Spencer*, 15 Johns., 244. *Bigelow* v. *Stearns*, 19 id., 41. *Slocum* v. *Wheeler*, 1 Conn., 429. *Perkins* v. *Perkins*, 7 id., 558. *Sears* v. *Terry*, 26 id., 273. *Bruce* v. *Wait*, 1 Mann. & Grang., 1. " The courts in this state are all of limited jurisdiction." Hosmer, Ch. J., in *Griswold* v. *Mather*, 5 Conn., 439. Also so held in *Perkins* v. *Perkins*, 7 Conn., 565.

A citizen of Connecticut is permitted by our courts to invalidate a judgment of a sister state against him by showing a want of notice. On every principle a citizen of another state ought to have the same privilege with regard to a judgment of a court of Connecticut.

In this case the record does not find any service of process, or appearance of the defendant. No record imports verity unless the facts are found by the court. " Neither the original, nor any intermediate process, nor the indorsement nor attestation of service, constitute in truth any part of the record of the court, in any sense in which the records are understood to import verity. They prove nothing more than their own existence, except so far as the facts stated in them are established *by the finding of the court*, either directly or by reference to them. Even the officer's return of service affords only *prima facie* evidence of the facts therein stated." Williams, Ch. J., in *Fox* v. *Hoyt*, 12 Conn., 498.

" It is familiar to every practising lawyer that the return of an officer on mesne or final process is *prima facie* evidence only ; this is the ancient and invariable doctrine of our courts, and settles the law of Connecticut on this subject." Hosmer, Ch. J., in *Watson* v. *Watson*, 6 Conn., 334. A presumption of law ought never to be allowed to deprive a party of his just rights. *Lex facit nemini injuriam.*

*Baldwin* and *W. C. Crump*, contra.

The evidence offered by the defendants was in contradiction of the record of the original judgment and therefore rightly excluded by the superior court. That court being one of

general jurisdiction, there is a presumption of law which can not be controverted in any collateral proceeding, that such jurisdiction was rightly exercised. *Sanford* v. *Sanford,* 28 Conn., 6, 16. *Bridgeport Savings Bank* v. *Eldredge,* id., 557. *Huntington* v. *Birch,* 12 id., 151. *Moore* v. *Starks,* 1 Ohio S. R., 369. *Richards* v. *Skiff,* 8 id., 586. And this presumption specifically includes that of service of process, giving the defendant notice. *Cook* v. *Darling,* 18 Pick., 393. *Granger* v. *Clark,* 22 Maine, 128 ; also cases above cited.

This presumption is not open to the objection that a party defendant against whom judgment is taken by default, and who in fact had no notice, is without remedy ; for, if he is injured thereby, he has the remedy of a writ of error,—a remedy suited to the case, guarded, and limited in the time in which it may be used. 1 Swift Dig., 790. *Burgess* v. *Tweedy,* 16 Conn., 44. 2 Am. Lead. Cases, (ed. 1857,) 812 *Cook* v. *Darling,* supra. *Granger* v. *Clark,* supra. In cases of judgments not domestic, like that in *Aldrich* v. *Kinney,* 4 Conn., 380, this remedy could not be had, and an exception to the rule is founded upon that fact. Where a party would be subjected to great injustice, and relief can be had in no other way, a court of equity will sometimes grant relief by injunction. *Pearce* v. *Olney,* 20 Conn., 544. The defendants' claim if allowed would introduce utter uncertainty into all our judgments by default, permitting them to be attacked and treated as void in any collateral proceeding and at any distance of time. See also *Huntington* v. *Charlotte,* 15 Verm., 46 ; *Foot* v. *Stevens,* 17 Wend., 483.

Even if the defendant in the original suit could make this defense in an action of debt on the judgment, these garnishees can not make it in this case, nor the assignees of the debt who are defending in their name. *Miner* v. *Cook,* Kirby, 157.

ELLSWORTH, J. From this *scire facias* it appears that the plaintiffs recovered judgment against Calvin Durand of Milford in this state, for the sum of $3,054.49 damages, and $22.49 costs, in the superior court holden in New Haven, on

---

---

the first Tuesday of September, 1849. The present defendants, Henry P. Haven, Charles Prentiss and Thomas W. Perkins, were factorized in that suit, as debtors of Durand. Judgment having been recovered, execution was taken out and demand made upon the garnishees, but they refused payment, whereupon the present suit was brought to recover of them the amount of the judgment. The defendants filed a motion, informing the court that they had received notice from one Maxwell and one Hart, that they were the owners of the debt by virtue of an assignment from Durand, and that the defendants must not make payment to any person but themselves, and prayed for an order under the statute for notice to be served on Maxwell and Hart to come in and assume the defense of the case, that the ownership of the debt might be settled among the claimants, so that they might safely pay the debt to the true owners, without further litigation ; which order they obtained, and under it have cited in Maxwell and Hart, who have assumed the defense, and are making defense in the name of the garnishees. Of course the garnishees admit that they owe the debt to one of the parties, and are ready to pay as soon as the question of title is settled.

The plaintiffs, in making out their claim to the debt by their attachment of it under the original process, read in evidence the record of their judgment against Durand in the original factorizing suit. To avoid the effect of this judgment the defendants offered to prove that, at the time when the copy of the original writ was said to have been left with Durand in service at his place of abode in Milford, he was not an inhabitant of or resident in Milford, and had no usual place of abode in the state, but was an inhabitant of the state of New York, and domiciled in the city of New York. On objection made by the plaintiffs' counsel, the court excluded the evidence. The correctness of this ruling is the question presented for our consideration. Two questions obviously arise upon this inquiry: First, can the defendants themselves, either as garnishees or as assignees of the debt, take advantage of the fact which they set up, or is it one which belongs to Durand alone to take advantage of ? and secondly, can it be set up

Coit *v.* Haven.

either by him or by the defendants in this collateral manner, in opposition to the judgment which stands unreversed?

With regard to the first point, it is obvious that the invalidity of that judgment is of no importance to these defendants, in their position as assignees of the debt, unless the plaintiffs' attachment is of an earlier date than their assignment. If the fact be not so, that is, if the debt was legally assigned to them before the plaintiffs attached it, the judgment is obviously of no avail against them, however valid it may be in itself. It could create no lien upon the debt except subject to their prior rights, or rather it could create no lien at all, since the debt would have wholly ceased to be the property of Durand and the attachment would take nothing. But if, as we have understood to be conceded, though the fact does not appear upon the record or upon the motion, the assignment of the debt to the defendants was after the attachment of it by the plaintiffs, then the defendants took the exact interest of Durand in the debt, neither more nor less, which was an interest subject to the lien of the plaintiffs' attachment, so far as that attachment and the proceedings founded upon it were regular and legal. Taking therefore the interest of Durand they would stand precisely in his place, and could make any defense which he could make, and none which he could not make—taking it for granted that they did not take under any such stipulation as to the prior lien of the attachment that they would be bound by it. This brings us then to the second inquiry, what could Durand do himself? Could he attack the judgment collaterally, or must it, if avoided at all, be regularly-reversed by some direct proceeding for that purpose.

This judgment was recovered before one of our own courts of general jurisdiction, and so is distinguishable from the judgment of a foreign court, or one of a limited and special jurisdiction. The question here turns upon this distinction.

We do not understand that, upon the authorities at home or abroad, there is any contrariety of opinion, that a domestic judgment rendered by a court of general jurisdiction, where no want of jurisdiction is apparent on the record, can not be collaterally attacked. If it be a foreign judgment, or the

judgment of a court of limited jurisdiction, or the want of jurisdiction is apparent on the record, it can be collaterally attacked; for then the jurisdiction is not presumed, or the presumption is repelled by the record itself, and the judgment is an absolute nullity if the want of jurisdiction in fact exists. This subject with its various distinctions was carefully considered and passed upon by this court, in the late cases of *Sears* v. *Terry,* 26 Conn., 273, and *Sanford* v. *Sanford,* 28 id., 6; and in the less recent ones of *Pearce* v. *Olney,* 20 id., 544, *Wood* v. *Watkinson,* 17 id., 500, and *Aldrich* v. *Kinney,* 4 id., 380. We think this point is no longer open to dispute. See likewise 2 Am. Lead. Cases, (ed. 1857,) 812, *Cook* v. *Darling,* 18 Pick., 393, *Granger* v. *Clark,* 22 Maine, 128, and *Burgess* v. *Tweedy,* 16 Conn., 39.

If this rule of law be applicable to the present case it is decisive of it; and we think it is directly applicable. The defendants' counsel insist that jurisdictional facts are never found absolutely and conclusively, by any court, whether its jurisdiction be general or special; and that to this extent any record may be attacked and disproved. We can not yield to this claim. Jurisdictional facts, such as service of the writ and the like, are presumed, and conclusively presumed, in the case of a domestic court of general jurisdiction, unless the record itself shows the contrary, which the present does not; and we suppose the same would be true of a foreign judgment of the same character, were it not that a citizen here can not by any process reach a foreign judgment, to get it reversed, without going to the foreign jurisdiction where the judgment was rendered, which is never required of our own citizens or inhabitants.

Jurisdictional facts are conclusively presumed in courts of general jurisdiction, even when not found by the court. But in the present case it is not necessary to rest upon that presumption, for the jurisdictional fact called in question by the defendants is found by the court. The superior court finds that the suit against Durand was regularly brought to that term of the court. The language of the record is, " This action came to the present term of this court; " which finding, (and

it is not merely formal) can not be true, unless the writ was duly served on Durand. This is the usual record in such cases in courts of law ; though a more direct finding of the fact of service is usually made in decrees in equity.

But the counsel for the defendants urge the extreme hardship to which a party may be subjected, if he may not deny and disprove the service of the writ, when he can clearly show that in fact no service was ever made on him, and that he never had notice of the suit in any form, and never heard of the judgment against him until it was made the ground of an action. They say, with great emphasis, and the argument is certainly a forcible one, can it be that a clerk of the court may fabricate a record, or an officer make a false return of service, and yet there be no escape for one who is thus by a judgment in the suit made heavily indebted, or found guilty of a wrong, when in fact he is perfectly innocent, or never owed the debt, and could show it clearly if he had a chance ? Will a court, they ask, because it has a general jurisdiction, protect and give effect to such a fraud ?

It will not be claimed, and has not been on the argument, that when a court has jurisdiction its record speaks absolute verity, because it is the record of the court's doings ; and being a court of final jurisdiction, there must be an end to the matter in dispute, if it be possible to reach that end at all. And it is so necessary that confidence should be reposed in courts of a high character, as well as in the records of such courts, that on the whole, and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than to leave them open to be attacked in every way and on all occasions. Being domestic judgments, they can, if erroneous, be reviewed by proceedings instituted directly for the purpose and reversed on error, or by a new trial, and, if the danger is imminent and special, relief can be temporarily if not finally obtained by application to a court of equity. This was done in the case of *Pearce* v. *Olney*, above referred to. Any other rule with regard to judgments of such courts would be attended in its application with very

great embarrassment, and would be very dangerous in its general operation. The general good clearly requires, and has therefore established the rule, that domestic judgments of courts of general jurisdiction can not be attacked collaterally.

The reason why this rule is not extended to the judgments of all courts, is, as we have before suggested, that the law conclusively presumes the jurisdictional facts in the case of a judgment of a court of general jurisdiction so long as the record shows nothing to the contrary, but does not make any such presumption in favor of the judgments of courts of limited jurisdiction. The jurisdiction of such courts not being presumed must depend upon actual facts, which of course are open to dispute, and not concluded by the record ; for if the jurisdictional facts did not exist the court really had no jurisdiction, and its record is not in the eye of the law an absolute verity, but a mere unauthorized narration.

These are the reasons in brief why the ruling of the superior court is in our judgment correct and must be sustained. We therefore do not advise a new trial.

In this opinion HINMAN, C. J., concurred ; BUTLER, J., having tried the case in the court below, did not sit.