## Case No. 5,205.

GALPIN v. PAGE.

[1 Sawy. 309.] [1]

Circuit Court, D. California. Sept. 13, 1870. [2]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]
[2] [Reversed in 18 Wall. (85 U. S.) 350.]

J. B. Harmon, for plaintiff.
Williams & Thornton, for defendant.

SAWYER, Circuit Judge. If the decree, or "judgment," as the statute of California terms it, in the consolidated actions of Gray v. Eaton, Palmer et al., was upon its face a valid decree or judgment, and if it authorized the sale under which defendant claims, at the time it was made, the sale is valid, and it passed the title; and the subsequent reversal of the decree by the supreme court of California on appeal, did not invalidate the title thus acquired, while the decree was in force. This is settled by the case of Gray v. Brignardello, 1 Wall. [68 U. S.] 633–637, in which this identical sale was under consideration. The question, then, is, was there a valid decree, or judgment, authorizing the sale in force at the time the said sale was made?

By some oversight, in the case of Gray v. Brignardello, only the interlocutory decree of the 27th of October, 1855, was introduced in evidence, and the supreme court, finding only this decree in the record, necessarily assumed that there was no other, and held that this decree, being interlocutory, only, did not authorize a sale. The sale was held to be void on the ground that there had been no final decree entered authorizing it. In the present case, as shown by the findings, it appears, that the commissioner on the 25th of March, 1856, made his report as required by the said interlocutory decree of October 27, 1855; that his report was duly confirmed, and a final decree in accordance therewith directed by order of the court, on the 7th of April, 1856, and on the same day, in pursuance of such order, a final decree was drawn up, signed by the judge, filed in the case, and afterward duly entered in the judgment book; and that the commissioner had the original decree so signed and filed, in his possession for the purposes of the sale, at the time of making said sale. The said decree of the 7th of April, 1856, in terms empowers the commissioner to sell. If these several decrees were valid, at the time of the sale, the sale under them is valid, and the title to the property has passed to the defendant, Lucy B. Page. Although the same title is in question, the ground upon which Gray v. Brignardello was reversed, is obviated in this case, by the introduction of the

decree therein omitted, and the decision must depend upon other points not determined in that case. The question now is, whether it appears upon the face of the record, that the court had no jurisdiction to make a decree that should be binding upon all, or any, of the defendants, for, as expressed in a very old case, "the rule of jurisdiction, is, that nothing shall be intended to be out of the jurisdiction of a superior court, but that which especially appears to be so." Peacock v. Bell. 1 Saund. 74. The record in the consolidated action is here attacked collaterally, and, not on appeal, or in a direct proceeding of any kind to reverse, set aside, or vacate the decree. The rule is different in the two cases. When attacked collaterally, it is not enough, that the record does not affirmatively show jurisdiction, but on the contrary, it must affirmatively show that the court did not have jurisdiction, or the decree will be valid until reversed on appeal, or vacated in some direct proceeding taken for that purpose. Hahn v. Kelly, 34 Cal. 391; Grignon's Lessees v. Astor, 2 How. [43 U. S.] 319, 340, 341, 343; Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 449, 471–473, 475; Sargeant v. State Bank of Indiana, 12 How. [53 U. S.] 384–386; Huff v. Hutchinson, 14 How. [55 U. S.] 588; Ex parte Watkins, 3 Pet. [28 U. S.] 193; Town of Huntington v. Town of Charlotte, 15 Vt. 46; Foote v. Stevens. 17 Wend. 483; Granger v. Clark, 22 Me. 128. If the decree under which the sale in question was made is void, it is on the ground that it appears on the face of the record, that there was no service, in any mode recognized by the statute, upon the infant defendant, Franklina C. Gray, who was, at the time, a resident of the state of New York, and the court failed to acquire jurisdiction of her person. Since the trial of other cases in this court involving titles derived under the same sale, the subject of the validity of judgments obtained upon publication of summons on a collateral attack, has undergone, in the case of Hahn v. Kelly, 34 Cal. 391. a more thorough investigation in the supreme court of the state of California than it had ever before received in that court. After an elaborate discussion of the whole question, prior decisions, upon some points, were somewhat modified. and the law upon the subject. so far as this state is concerned, was finally settled. This decision has been repeatedly affirmed by subsequent decisions, both before and since the change in the constitution of the court. and as it settles the law of California upon the subject. I regard it as binding upon this court, which. in the present action, is only administering the laws of the state of California.[3] Besides. I am satisfied that the decision rests upon

sound and well established legal principles, often recognized by adjudications of the supreme court of the United States. Under the decision in Hahn v. Kelly, I have no doubt that upon the face of the record in the consolidated actions of Gray v. Palmer, Eaton, et al., and Eaton v. Palmer et al., when presented in a collateral proceeding, the court must be held to have acquired jurisdiction of the person of Franklina C. Gray, for the purposes of determining her rights in the subject matter of those actions. In the former case, there is no room for doubt. Besides, in that very case, on appeal from the decree now under consideration, the very question was directly presented to the appellate court, whether there was a valid service on said infant, under the laws of California; and it was held on said appeal to be a valid service, but the decree was reversed on other grounds. Gray v. Palmer, 9 Cal. 616, 637. Thus, the question whether there was a valid service, under the statutes of California, was directly determined in the affirmative by the highest court in the state on appeal. wherein the question was directly made and decided. But it was held on the same appeal, that there was no sufficient service on the said infant, Franklina C. Gray, in the other case of Eaton v. Palmer, and the decree as to that case was for this error reversed only "so far as it affects the rights of the infant, Franklina C. Gray," and was not disturbed as to any of the other defendants. Id. 641. But this was after the sale in question. and the question on appeal is a very different one from the question presented when the judgment is attacked collaterally, as is the case now in hand; and it does not follow that the decree was not valid at the time of the sale, as to the infant. on a collateral attack, because it was afterward reversed on appeal on the ground stated. At the time of the sale, a purchaser was entitled to rely on the validity of the decree, unless it affirmatively appeared on the face of the record that the court had no jurisdiction of the infant. Does. a want of jurisdiction so appear? I think not. Certainly not under the principles established by the supreme court of California in the case of Hahn v. Kelly, supra, and subsequent cases affirming it.

The provisions of the statute in force, at the time of the pendency of the action respecting service on non-resident defendants, who were necessary parties to actions, and respecting judgments, and judgment rolls affecting the question. are found in the finding of facts. and need not be repeated here. The statute. it will be perceived, does not provide what shall be done with the orders of publication. or the affidavits upon which they are based. They do not constitute any part of the judgment roll, as was held in Hahn v. Kelly. 34 Cal. 404, 429. We can only look to the judgment roll in a collateral attack, for that. and that only. is the record. Id. 404, 425, 429. Upon the same point, the

---

[3] "This construction of a state law upon a question affecting the title to real property in the state by its highest court. is binding upon the federal court." Williams v. Kirtland. 13 Wall [80 U. S.] 311, decided since the decision of this case.

supreme court of California, in Sharp v. Daugney, 33 Cal. 512, 513, says:

"The order of publication, and the affidavit on which the order was based, were also in evidence, but as neither the one nor the other constituted any part of the proof of service, they were both foreign to the record, by which, in a collateral attack upon the judgment, we can only be advised concerning the jurisdiction of the court to pronounce it. The circumstance that papers not belonging to the judgment roll are found commingled with it, or attached to other papers that do belong to it, can create no embarrassment. The case is one of mixture and not of fusion, and the papers not falling within the statute definition of a 'judgment roll,' must be treated as of no effect."

The record imports absolute verity, and cannot be impeached from without. See 34 Cal. 422 et seq. The statute in force when the judgment or decree in question was rendered, provided—Firstly, that the judgment should be entered in the judgment book; secondly, that "immediately after entering the judgment, the clerk should attach together and file the following papers, which shall constitute the judgment roll: (1) In case the complaint be not answered by any defendant, the summons, with the affidavit or proof of service, and the complaint, with a memorandum endorsed on the complaint that default of defendant in not answering was entered, and a copy of the judgment; (2) in all other cases, the summons, pleadings and a copy of the judgment, and any orders relating to a change of parties."

Taking the view most favorable to plaintiff, and regarding the judgment in question as one by default, although there was a guardian appointed and an answer filed, and examining the papers which constitute the judgment roll, or the record, and we find an affidavit of the printer showing publication of summons. This is all we would expect to find in that affidavit. The printer's affidavit never covers any fact other than the publication of summons. That branch of the proof is fully covered. The affidavit of deposit of a copy of the complaint and summons in the post office, or of the statutory substitute, personal service of a copy at the residence of defendant abroad, covers a separate and independent fact, and is always made by a different party. In this case, no affidavit now appears on the record as to deposit in the post office, or personal service abroad as a substitute. The record, therefore, is simply silent on the subject. It does not affirmatively appear by the record, or by evidence on file, or otherwise, what was done, or that anything was done upon this point; nor does it appear that nothing was done. The record is simply silent. Nor does it appear by the record that the residence of the infant was known to the plaintiff, unless it can be inferred from the fact that because the plaintiff in the other case of Gray v. Palmer

[supra] was aware of her residence, that Eaton must, also, have been aware of it. But, in a collateral attack upon the judgment, we are not authorized to arrive at conclusions in this mode, although this is the way the supreme court of California seems to have arrived at its conclusions on appeal. It does not appear, therefore, that it was a case requiring a deposit, or if it does, it does not affirmatively appear that the deposit in the post office was not made. The record is simply silent on the subject. It neither appears in the judgment roll nor record, nor even in the files or minutes of the court, so far as they have been presented in this case, whether there was a deposit in the post office; or a personal service abroad, as a substitute, or not. There is simply nothing on the subject, except what is shown by the findings. It is notorious that at that time papers were carelessly kept, and much negligence prevailed, in making up judgment rolls. In this very case, the papers were not attached together and filed as a judgment roll, until November 24, 1856,—long after the time prescribed by the statute, and of the sale; and, even then, a copy of the final judgment was omitted from the roll, although the judgment itself had been duly entered in the judgment book. At that time, and for a long time afterward, the original draft of the judgment signed by the judge, and filed in the case, was in the hands of the commissioner, and, doubtless (though it does not so affirmatively appear), for the purpose of the reference, all the papers were, from time to time, also in the hands of the commissioner. Ample opportunity for loss was afforded, and no little neglect occurred. Some of the papers may have been lost during that time, and for that reason may have been omitted. If so, the rights of parties purchasing cannot be affected by the carelessness of the clerk in performing the manual duty of keeping and attaching together the proper papers designated by the statute as constituting the judgment roll. Lick v. Stockdale, 18 Cal. 223; Sharp v. Lumley, 34 Cal. 614. In this case, during the long delay in attaching together the papers to form a judgment roll, some were mislaid, and others may well have been lost. But however this may be, the court is a superior court, and under the authorities cited, when the records of such court is silent, all intendments are in favor of the judgment. In such cases, that is to say, when the record is silent, it certainly does not show affirmatively a want of jurisdiction. Looking to the judgment roll alone, in this case, a want of jurisdiction is not disclosed by the record. The most that can possibly be said is that it does not affirmatively show a service on the infant in any mode recognized by law; but as we have seen, this is insufficient to invalidate a judgment on a collateral attack.

If it is admissible to go outside of the judgment roll to the files and minutes of

the court for the purpose of impeaching the record,—but it is not; Hahn v. Kelly, supra, —we find nothing more in this case of an affirmative character tending to impeach the judgment. We simply find the same absence of the material facts, that is found in the roll or record. But, upon looking at the order appointing a guardian ad litem in the case of Eaton v. Palmer [supra], in which the defective service exists, if anywhere, we find a recital in the order, that, "it appearing to the satisfaction of the court, from the said petition and consent (consent to act as guardian), and the other papers and certificates on file in said action, that the said infant defendant, Franklina C. Gray, is under the age of fourteen years; that she is a necessary party to the complete. determination of the controversy in the said action; and that the service of the summons in the said action upon her has been completed upwards of ten days, it is, on motion of Glassell and Leigh, attorneys for the said plaintiff, ordered that Henry S. Foote be, and he is hereby appointed guardian ad litem," etc., etc. This is an express adjudication that there was a service, and the court, certainly, had jurisdiction to determine this question. The evidence upon which it acted may have been subsequently lost. The record certainly contains nothing to contradict it. And this adjudication is of itself sufficient to sustain the judgment when collaterally attacked, if we can look outside the judgment roll at all. Sargeant v. State Bank of Indiana, 12 How. [53 U. S.] 384, 385; Grignon's Lessees v. Astor, 2 How. [43 U. S.] 319, 340, 341; Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 472, 473; Erwin v. Lowry, 7 How. [48 U. S.] 181; Landes v. Brant, 10 How. [51 U. S.] 370, 371; Lick v. Stockdale, 18 Cal. 223; Hahn v. Kelly, supra. In Erwin v. Lewis, the court say, "We hold that wherever a judgment is given by a court having jurisdiction of the parties and of the subject matter, the exercise of jurisdiction warrants the presumption, in favor of the purchaser, that the facts which were necessary to be proved to confer jurisdiction were proved." 7 How. [48 U. S.] 181. In Sargeant v. State Bank of Indiana, 12 How. [53 U. S.] 384, the recital was, "It appearing to the court now here, that proper legal notices having been given of the motion, it is by the court ordered," etc.; and the court say (page 385), "the real, veritable record informs us that legal and sufficient notice was given to the heirs of Samuel Sargeant, but whether by this paper (a paper found among the files) or in what other mode (except that it was legal and sufficient), we are not told, and are not at liberty in this case to indulge in inferences against the verity of the record. It is a principle well settled, too, in judicial proceedings, that whatever may be the power of a superior court in the exercise of regular appellate jurisdiction, to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and re-examined collaterally by a distinct tribunal, one not acting in the exercise of appellate power. To permit the converse of this principle in practice, would unsettle nine tenths of the rights and titles in any community, and lead to infinite confusion and wrong." The syllabus in Grignon's Lessees v. Astor is: "It was for the court to decide upon the existence of the facts, which gave jurisdiction; and the exercise of jurisdiction warrants the presumption, that the facts which were necessary to be proved, were proved." 2 How. [43 U. S.] 319. And the court say: "The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they exist or not, is wholly immaterial, if no appeal is taken; the rule is the same, whether the law gives an appeal or not; if none is given from the final decree, it is conclusive on all whom it concerns." Id. 340.

In Voorhees v. Bank of U. S. land of a non-resident debtor was sold under a proceeding in attachment. It was "contended by counsel for plaintiff in error, that all the requisitions of the law are conditions precedent; which must not only be performed before the power of the court to order a sale, or the auditors to execute it can arise, but that strict performance must appear on record." 10 Pet. [35 U. S.] 471. But the court say on this point, "The process which they adopted was the same as prescribed by the law; they ordered a sale, which was executed, and on the return thereof, gave it their confirmation. This was the judgment of a court of competent jurisdiction on all the acts preceding the sale, affirming their validity in the same manner as their judgment had affirmed the existence of a debt. There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears; this rule applies as well to every judgment or decree rendered in the various stages of their proceedings, from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated becomes a part of their record; which henceforth proves itself, without referring to the evidence on which it has been adjudged.

"In this case the court issued an order of sale, agreeably to law, which having been returned by the auditors, and 'being inspected, the court grant judgment of confirmation thereon.' It is, therefore, a direct adjudication that the order of sale was executed according to law. They had undoubted authority to render such a judgment; and there is nothing on the record to show that it was not rightfully exercised. If the defendants' objections can be sustained, it will be on the ground that this judgment was false;

and that the order of sale was not executed according to law, because the evidence of its execution was not of record. The same reason would equally apply to the non-residence of the defendant within the state, the existence of a debt due the plaintiff, or any other creditor, which is the basis on which the whole proceeding rests. The auditors are equally silent on the evidence upon which they reported that debts were due by the defendant, as on the evidence and notice of due publication; but no one could pretend that the judgment that the debts reported were due, shall be presumed to be false. Though the able and ingenious argument of the defendant has not been directed at this part of the judgment of the court of common pleas, the grounds of objection are broad enough to embrace it; for, in resting their case on the only position which the record leaves them, they necessarily affirm the general proposition that a sale by order of a court of competent jurisdiction, may be declared a nullity in a collateral action, if their record does not show affirmatively the evidence of a compliance with the terms prescribed by law in making such sale. We cannot hesitate in giving a distinct and unqualified negative to this proposition, both on principle and authority too well and long settled to be questioned." Id. 472.

And in Lick v. Stockdale, 18 Cal. 223, the recital of service was held conclusive, even when the question was presented on appeal from the judgment. The court say: "Several assignments of error are made: 1st. That the judgment roll does not show that the court ever acquired jurisdiction over the person of Stockdale, one of the defendants; but the finding of the court is that the defendant was duly served with process, and this recital is sufficient to show that the court had jurisdiction. The judgment does not depend upon the performance of the clerical duty of making up the judgment roll, or the preserving of the papers. It is enough if the facts exist which are required to give jurisdiction to the court; and the finding in this case is that they do exist, though the summons and returns—the usual evidence—may have been lost or mislaid."

In Hart v. Seixas, 21 Wend. 40, the court went still further, probably too far, when the case is on appeal. So in the case in hand, the appointment of a guardian ad litem, the recital of the service of process in the order (or whether recited or not), the subsequent proceeding ordering a sale, confirmation of sale, etc., are as much an adjudication that the proper proceedings had been taken, as the several proceedings referred to were adjudications upon a similar point in the cases cited, and in several of those cases the defendants were non-residents. And there is nothing in the record, or even in the files, or other evidence introduced, outside the technical record, inconsistent with the adjudica-

tion. There is simply a failure to state in the record, as it now exists, what the evidence as to one particular upon the question of due service was, and under the authorities cited, and especially in the case of Hahn v. Kelly [supra], the presumption that the court had the necessary evidence and properly adjudicated the question, must prevail in this collateral attack.

It has been earnestly urged that this presumption in favor of the record does not prevail when it appears that the party to be served resides out of the state, and beyond the territorial jurisdiction of the court; that it only applies when the party resides, or is presumed to reside, within the territorial jurisdiction of the court; that when the record shows, as in this case, that the party to be served is not within the territorial jurisdiction of the court, the presumption is changed, and that the record must affirmatively show the performance of all acts necessary to give jurisdiction of the person in such an action, and this was once so held by this court. But aside from that case, I do not find this position thus broadly stated sustained by the authorities, and with deference to the opinion in the case referred to. I can find no substantial ground for making this distinction. The authorities cited by plaintiff's counsel do not appear to me to sustain the position. They are cases depending upon different principles, in actions purely and strictly personal, which will be briefly alluded to in the course of this opinion, but which, it appears to me, have no application to this case, or to the class of cases to which this belongs. The presumption in favor of the validity of judgments of superior courts in cases where there is a mode provided by law for acquiring jurisdiction for the purposes of the action, are not made to rest on the fact that the parties to the proceeding reside within the territorial jurisdiction of the court, but upon the character of the courts themselves, and the great principles of public policy which require that some confidence should be reposed in the proceedings of the higher judicial tribunals of the land. The law of California, as of most other states, provides means by which jurisdiction of the parties in certain cases may be acquired, both when they reside within and without the territorial jurisdiction of the court. The means in the case of residents may be, and they usually are, different from those prescribed in cases of non-residents. But the court can no more acquire jurisdiction of a resident without pursuing the course prescribed by law to acquire jurisdiction of such resident, than it can acquire jurisdiction of a non-resident, without pursuing the course prescribed for acquiring jurisdiction of such non-resident, and, in the latter case, it as clearly has jurisdiction to determine for itself whether it has acquired jurisdiction, as in the former. In determining that question it exercises the same kind of judicial func-

tions as it would in determining whether it has acquired jurisdiction of a resident, and having jurisdiction to determine the question, and having determined it, in a case where the law provides for acquiring jurisdiction of a non-resident, is not the adjudication entitled to the same credit, and are not the same presumptions as to the correctness of the determination to prevail, in the one case, as in the other? ·Are not the same principles of public policy as applicable to one as to the other? If not, why not? It rests upon those who maintain a different doctrine to present some solid reason. for making the distinction. In Hahn v. Kelly, 34 Cal. 426, 427, one of the justices observes on this point:

"The court exercises the same functions and the same jurisdiction in determining whether there was a service, whether personal, and the evidence is the certificate of the sheriff, or affidavit of a party competent to serve the process, or by publication, and the evidence is by the affidavit of the printer. And I see no reason why the same presumption should not arise in one case as in the other. It is a record in either case, for the statute makes it so in one case as well as in the other. And the record must be tried by itself alone. There is no new jurisdiction, either as to the person or subject matter conferred on the court by the statute authorizing service by publication of summons. The service is made in cases involving the ordinary process of the court. Only the mode of serving process is modified in certain cases within its ordinary jurisdiction.

"In some of the states a service was formerly, and, doubtless, now is, made by leaving a copy of the summons at the residence of the defendant, with some person of suitable age and discretion, or at his last known place of residence. I am not aware that any different rule of presumptions in courts of record was applied to the record of a domestic judgment on a·service of this kind, from that applied to a service upon the party himself. Yet this can no more be called a personal service than a service by publication. The only question at last is, was there a service in any legal mode? and the court has jurisdiction to determine that question. If the court determining the question is a court of record, the judgment record imports absolute verity, and whatever that says must be taken as true. If the record in fact does not speak the truth, the only remedy of the party is to attack it directly on appeal, or in the court of which it is a record, if under the circumstances it can there be corrected, or by some direct suit or proceeding known to the law to vacate it." See, also, Id. 415; and Coit v. Haven, 30 Conn. 190 Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 469; Sargeant v: State Bank of Indiana, 12 How. [53 U. S.] 385,—which were cases of non-residents and absentees.

I will now notice some of plaintiff's authorities on the points before discussed. In the case of D'Arcy v. Ketchum, 11 How. [52 U. S.] 166, cited by plaintiff, the record stated affirmatively that there was no service. In Hollingsworth v. Barbour, 4 Pet. [29 U. S.] 466, the party "did not claim as locator" (Id. 473), and the case was not within the statute authorizing a service by publication. The whole proceeding was unauthorized, as the court was not empowered to obtain jurisdiction in the mode attempted. Id. 474–476. In Boswell's Lessees v. Otis, 9 How. [50 U. S.] 348, the court did not have jurisdiction of the particular subject matter in controversy, in the mode of procedure adopted, and there was no authority under the statute to proceed against the person, or against the land without a service on the person. The case of Harris v. Hardeman, 14 How. [55 U. S.] 334, was not a case of collateral attack. The court below upon a direct attack while the proceedings were still, "as it were, in fieri," by motion as a substitute for a writ of error coram vobis or audita querela, had set the judgment aside. Id. 345, 346. This action was thereupon affirmed upon writ of error. Besides the record disclosed what the service was. The court say, also, that there is "less show of objection to such action on the part of the court, as it affects the rights of no third parties, but is limited in its consequences to the parties to the suit only." Id. 346. And even in this case, it is worthy of remark, that three of the justices of the supreme court dissented. The inapplicability of the other cases cited on this point by plaintiffs, upon examination will be found to be equally obvious. They are, with but few exceptions, cases strictly personal, wherein judgments for money have been rendered against non-residents where there was no possibility of a personal service, and where, also, there was no provision of law whatever for procuring a constructive service; and the question has arisen in a subsequent suit between the same parties, upon the judgment, in the state where the defendant resides. The question is presented when the transcript of the personal judgment is offered in evidence in the foreign jurisdiction, and·constitutes the very basis of a new action. In such cases it has been held that the judgment may be attacked collaterally on the ground of want of jurisdiction of the person, and this, even when the record affirmatively shows a personal service in due form—that the fact of service may be inquired into without regard to what appears in the record. In short, no force at all is given to the record on the question of jurisdiction beyond mere prima facie evidence. And in that class of cases, where the courts have gone so far in disregarding the record of a foreign judgment, it is not surprising that, on the issue, as to whether jurisdiction of the person has been acquired, proof that the defendant did not reside within the territorial

jurisdiction, should be regarded as raising a presumption that there was no personal service sufficient at least to require the record to rebut it by an affirmative showing of service.

This would be but a reasonable presumption, and especially so, since the law of the state provided no mode of acquiring jurisdiction by even a constructive service. In such cases it has been held that the fact of an appearance, as well as a service, affirmatively shown by the record, may be disproved against the record. It is apparent that the ordinary rules relating to records do not apply at all to this class of cases. Those cases clearly depend upon a different principle from that involved in the case in hand, as was said in Granger v. Clark, 22 Me. 130; and this is the class of cases in which the presumption insisted on by the plaintiff has been indulged. The case of Borden v. Fitch, 15 Johns. 121, is one of the exceptions. The judgment in that case was for a divorce obtained in Vermont by publication. It was held invalid in New York, for want of personal service within the territorial jurisdiction of the court. But this decision would scarcely be regarded as law at this day.

The established doctrine now is, as I understand it, in cases of divorce, that the decree is regarded as acting upon the status of the parties. It is substantially treated as in the nature of a proceeding in rem, the status of the parties corresponding to the rem in proceedings in rem; and now, I believe, decrees of divorce upon service by publication against absent and non-resident parties in states where constructive service, in this mode, is authorized by statute, are, upon the principle indicated, regarded as valid in other states. If they are not, then thousands of citizens, at this day, must occupy very perilous positions. Besides, the question is a very different one, when arising between the same parties, upon the presumption of the record in evidence as the foundation for the recovery of a new judgment for the amount of money recovered by the old judgment, from that which arises when the judgment has been executed by a sale, and the question is, whether within the same territorial jurisdiction, a third party has acquired a title to land by virtue of such judgment and sale. In the first case, the question is, does the defendant in the judgment owe the money to the plaintiff? It is the old matter in litigation over again. If the demand is just, it may be established in some other mode; if unjust, a recovery certainly ought not to be had. In the other case, it is whether a stranger is entitled to consider the judgment of a superior court to be what it appears to be? May he repose any confidence in the action of courts? May he act on the presumption that a superior court has discharged its duty, and properly determined the question of its own jurisdiction, or must he deal with its judgments at his peril? But when a domestic judgment, even of the class referred to, is presented between the same parties, as a basis of a recovery in another action, the record cannot be contradicted, nor can its validity be impugned, unless the want of jurisdiction affirmatively appears on the face of the record itself. Town of Huntington v. Town of Charlotte, 15 Vt. 48; Granger v. Clark, 22 Me. 128; Coit v. Haven, 30 Conn. 199; Cook v. Darling, 18 Pick. 393.

It is insisted by plaintiff, that the decree in which the sale in question took place was purely against the person, and that no valid judgment against the person can, in any case, be had without personal service within the territorial jurisdiction of the court. While I admit that the proceeding is not strictly a proceeding in rem, I also think it is not strictly a proceeding against the person. The subject matter of the controversy was a partnership. The object was to establish a partnership, alleged to have existed within the territorial jurisdiction of the court, which had become dissolved by the death of one of the partners, to take an account of the partnership business, wind up and settle the affairs of the concern, and distribute among the parties interested the assets, which assets were also within the territorial jurisdiction of the court. The non-resident defendants were not themselves partners, but only interested as heirs of the deceased partner. The property claimed to belong to the partners consisted of both personalty and realty. There was no decree asked or made against the persons of the defendants, or affecting any property other than the alleged partnership property within the territorial jurisdiction of the court. The proceeding is quasi in rem, as it only operates upon specific property, like an attachment proceeding; a proceeding to foreclose a mortgage; or to quiet title to real estate. In Boswell's Lessees v. Otis the court say: "Jurisdiction is acquired in one of two ways; first, as against the person of the defendant, by the service of process; or secondly, by a procedure against the property of the defendant, within the jurisdiction of the court. In the latter case, the defendant is not personally bound by the judgment beyond the property in question. It is immaterial whether the proceeding against the property be by an attachment, or bill in chancery. It must be substantially a proceeding in rem. A bill for the specific execution of a contract to convey real estate, is not strictly a proceeding in rem in ordinary cases, but where such a procedure is authorized by statute on publication, without personal service of process, it is substantially of that character." 9 How. [50 U. S.] 348.

These observations are applicable to the case in hand. It is substantially, though not strictly or technically, a proceeding in rem. It is one of that class of cases wherein it is necessary to acquire jurisdiction of non-resi-

dent parties interested, for the purpose of affecting the status of the parties with reference to other parties, and to specific property, and the specific property itself, in some other mode than by personal service. Unless a constructive service could be obtained valid for the purpose, it would be impossible to wind up a partnership through the medium of courts by proceedings as to some of the parties in invitum, when the partners reside in different states. It is one of a class of cases everywhere recognized as proper for acquiring jurisdiction by constructive service, when the laws in terms authorize it. The statute of California provided for acquiring jurisdiction by publication of summons, and, I have no doubt, that when the statutory mode is pursued in such a case, the judgment or decree of the court disposing of the property is binding, as to the property, upon the non-resident parties. Jurisdiction is thus acquired for the purposes of the case in a lawful mode, although a party is absent. Whereas, in the case before referred to, of a purely personal judgment, there was no possibility of acquiring jurisdiction of the parties by any kind of service known to the law. In a collateral attack upon the judgment in such a case as that now under consideration, the question of jurisdiction must be determined upon the same principles as are applied when the question is, whether jurisdiction has been acquired of the person of a resident defendant. In the case of Hahn v. Kelly [supra], so often referred to, the defendant, Jones, in the action to foreclose the mortgage, was in Washington, D. C., at the time of the service, or attempted service, by publication. That case settles the law for the state of California; and, I believe, upon solid principles. From knowledge derived from a large experience, judicial and otherwise, in the state of California, I very much doubt, whether, under any rules less favorable to the sanctity of judgments of our superior courts, when presented for review in collateral proceedings, than that established in Hahn v. Kelly, a judgment could be found in the state, rendered during the first ten years of its judicial history, upon service by publication, that would stand the test of judicial scrutiny. And yet, owing to the transitory character of our population, during that time, the titles to vast amounts of real estate now depend upon the validity of just such judgments. Public policy demands that some confidence should be reposed in the judgments of our highest tribunals, and titles derived through sales sanctioned by judicial decrees, should not, years afterward, be lightly declared invalid. To adopt a different rule in this court from that established as the law of the state, would be to make the rights of the parties depend upon the particular court administering the laws within the same territorial jurisdiction in which the action is brought, and not upon the laws of the state of California, which we, in cases of this kind, are supposed to administer. Although this court may be regarded, as in some sense, a different jurisdiction from the state courts, yet it has the same territorial jurisdiction, and administers the same general laws as the state courts, and the judgments of the latter, in the said actions of Gray v. Palmer and Eaton v. Palmer, must be regarded in this court, for the purpose in hand, as domestic, and not foreign judgments. Since the decision in Hahn v. Kelly, it has not only been affirmed by the supreme court of the state in numerous instances, but it has also been heretofore followed in this court. Prieto v. Wells [Case No. 11,420].

That the papers constituting the judgment roll under the statute were not attached together by the clerk till long after the sale, and that a copy of the final judgment or decree was then omitted by the clerk cannot affect the rights of the parties. The law required the judgment to be entered in a book to be called a judgment book, and a copy to be annexed to the judgment roll. I take it that the original judgment, so entered in the judgment book is, at least, a record of as great solemnity as the copy attached to the judgment roll. Under the statute, the judgment is in a condition to be executed as soon as entered, and before the papers are attached together to form a roll, and before docketing. So held in Sharp v. Lumley, 34 Cal. 614, and other subsequent cases. See, also, Gray v. Palmer, 28 Cal. 419, 420. The latter case is an appeal from the final judgment of the district court dismissing the case involved in this controversy after the reversal of the judgment in question. But the appeal was not taken in time, and the question as to the propriety of dismissing the action could not be determined.

There is nothing in plaintiff's point that the commissioner's deed is void, because the sale is recited to have been made under the decree of October 27, 1855, when it was in fact made under the decree of April 7, 1856. In point of fact, strictly speaking, the recital in the deed is only that "James D. Thornton was appointed commissioner to sell," etc., under said decree, and this is strictly true. It was under that decree that he was appointed commissioner to sell. By the terms of that decree, he was directed to sell in pursuance of the directions in that decree, and of such further directions as the court should give.

And again in the final judgment, or decree, of April 7, 1856, the commissioner was directed "to proceed to sell all the property, real and personal, of the said partnerships, as directed in the former decree of this court"; and it was "further ordered" in said final decree "that in all things not otherwise herein provided the said commissioner do observe and obey the former decree herein rendered"; that is to say, the decree of October 27, 1855. The commissioner, therefore, did sell under the decree of October 27, 1855, as well as under the decree of April 7,

1856, for the latter decree so directed him to do, and referred to the earlier decree for specific directions. He in fact sold under both decrees, although he was "appointed" under the first. In selling under either he, also, necessarily, sold under the other. The deed does not in terms show under what he sold, but only by what he was appointed. In advertising the commissioner stated that he should sell under both decrees, expressly referring to both in terms, and the report of the sale embraced, as a part of the report, the advertisement containing said recitals of both decrees. The report, therefore, shows a sale under both decrees. The report of sale was confirmed, and the deed made in pursuance of the said sale. There is no contradiction of the recitals in the deed.

Another view, which seems to me to be entirely tenable, leads to the same result as to the title of the land in question. Conceding, for the purposes of this view, that the judgment or decree is invalid upon its face, as to the case of Eaton v. Palmer et al., I do not see why the decree and sale thereunder are not valid as a decree and sale in the case of Gray v. Palmer, Eaton et al. Although the two actions were consolidated for the purpose of a decree, after a trial of the main issues, in Gray's case, the decree is by no means joint. The claims of William H. Gray and Eaton are not joint, but several and adverse, and the portions of the decrees applicable to each are severable. In the case of Gray v. Palmer, Eaton et al., there can be no doubt as to jurisdiction of the infant on the face of record, and, as we have before seen, this was so held by the supreme court of this state on appeal. There was, then, in that case, jurisdiction of the subject matter, and of all the parties for the purpose, of that action. Eaton was a defendant in that action, and he set up in his answer as a defense in part, against Gray's action, and as a basis for affirmative relief, the same facts which are alleged in his complaint in his own action, and it was indispensable to ascertain all the facts as to his rights, in order to determine the rights of the plaintiff Gray, and decree the relief to which he was entitled; and it is by no means clear that, under the system in force in California, Eaton was not entitled to obtain his relief in that action. But, however this may be, in that case it was found that the partnership of W. H. Gray and Franklin C. Gray, was subordinate to the partnership of Eaton and Franklin C. Gray, and it was impossible to determine the rights of the plaintiff Gray, in the action of Gray v. Palmer, Eaton et al., without ascertaining all the facts, and taking the several accounts, precisely as they were ascertained and taken in the consolidated actions. It was also necessary to make the sale in order to distribute to plaintiff Gray, his share of the partnership assets in the same way it was made. So the findings, statement of the accounts and decree for a sale, are precisely as they necessarily would have been in order to afford William H. Gray the relief to which he was entitled, if Eaton had never commenced the suit of Eaton v. Palmer et al., or having commenced it, it never had been consolidated with the other. If there is anything wrong in the decree, the wrong does not consist in the statement of the accounts in determining the share belonging to Gray; or in ordering a sale and directing the share of Gray in the partnership assets to be paid to him; for all this would necessarily have been done in his own separate action, just exactly as it was done (the pleadings in that action required all this to be done), but it consists in erroneously distributing the balance after Gray received his share; and in this Gray had no concern whatever. He was only bound to look to his own rights, and having ascertained and secured them, he was not responsible for the disposition which the court might make of that part of the funds which belonged to others.

The facts determined, then, so far as Gray is concerned, and the decree of sale are precisely such as were necessary in the action of Gray v. Palmer, Eaton et al., and such as they would have been if the action of Eaton v. Palmer had never been connected with it. No good reason is perceived why the judgment and sale were not entirely valid as a judgment or decree and sale in that action. If the balance of the proceeds of sale, after setting apart to Gray the amount belonging to him, was improperly distributed, that was no concern of Gray's, or of the purchasers under the sale. They were not bound to look to the application of the proceeds. It is enough that the rights of Gray required just such a decree and sale, and that there was, in fact, such a decree as was necessary to afford him the proper remedy, and a regular sale in pursuance of the decree.

The decrees, in fact, were treated as several in the supreme court of California on appeal. In Gray v. Palmer et al. the entire decree was reversed on the ground of insufficiency of evidence to sustain it; and in Eaton v. Palmer it was only reversed as to the infant, for error in appointing a guardian ad litem before a service of process, and, as we have seen, the exigencies of the case of Gray v. Palmer et al. required the sale of all the property and a determination as between Gray and the other parties of all the other matters adjudged in the decree.

There was, then, a valid decree and sale in the suit of Gray v. Palmer. Just such a decree and sale as would have been necessary had there been no consolidation, and no such suit at all as Eaton v. Palmer.

Defendant's counsel, also maintain that as the court had jurisdiction of all the parties in Gray v. Palmer, by the consolidation of that action by the consent of the parties to it, with the other action of Eaton v. Palmer, the court acquired jurisdiction of the parties

in both, and cite Bustard v. Gates, 4 Dana, 436, to sustain the proposition. They also insist, that, although an infant be not served, yet, if a guardian ad litem be in fact appointed, and he appears and defends the action, the judgment is erroneous only, and not void; and the cases of Bustard v. Gates, 4 Dana, 430–437, U. S. Bank v. Cockran, 9 Dana, 395, and Benningfield v. Reed, 8 B. Mon. 106, appear to sustain this proposition, but, upon the view taken in this case, it is unnecessary to decide these points.

If wrong on the main proposition, as to the validity of the entire decree, at the time of the sale, the defendant claims, that, at worst, it was valid as to all parties except the infant, Franklina C. Gray, and that the sale passed the title to Mrs. Gray's half of, or interest in, the property; that defendant, therefore, has the title to one half the premises in controversy, and in any event the recovery must be limited to one undivided half. All the parties appeared in both actions except the infant, and there was a valid service and appointment of guardian ad litem, and appearance by said guardian in the case of Gray v. Palmer; and the other action of Eaton v. Palmer, in which, if in either, there was no service, the judgment was never reversed as to any of the defendants except the infant. The judgment in that case still stands as to all others. Is the judgment necessarily void as to all, because it did not affect the rights of one of the parties? Or was the judgment and sale valid as to the parties over whom the court had jurisdiction? If the latter is the true state of the law, then the title to the interest of all the parties, except the infant, passed by the sale, leaving the rights of the infant unaffected. In that case, she became a co-owner of the property with the purchasers instead of with her mother, and such a change in no way affects her legal rights to the property. It is legally a matter of no moment to her, who her co-owners are.

Evidently the supreme court of California, did not regard the judgment as void, as to all the parties because it was irregular as to the infant, for if this had been its view, the judgment when found to be void as to all, because irregular as to one, would have been reversed as to all. But it was not so reversed. It was only reversed as to the infant, and it stands to-day as to all the other parties, and this action of the court recognizes its validity. Does not this adjudication become the law of this case, whatever the rule may be as to others? Ex parte Watkins, 3 Pet. [28 U. S.] 206.

It is claimed on the part of the plaintiff, that the infant was a necessary or indispensable party to the action, and that being a necessary or indispensable party, the court had no jurisdiction to make a decree that would affect any of the parties without first acquiring jurisdiction as to such infant. There are many cases to the effect that the court will not proceed to a decree in the absence of a necessary party, but so far as they have been brought to my notice, the question in every case was raised somewhere in the progress of the cause, whereupon the court declined to proceed to a decree, or upon appeal from the decree. But assuming the infant to be a necessary party, the court in this case, did, in fact proceed to a decree, without any objection being made for want of parties, or want of service on the infant, and the decree was finally executed by a sale. No case has been called to my attention, in which it was held, that, as to those who were parties, such a decree is void, when called in question collaterally, or, that the parties, who were before the court, and permitted the court, in fact, to proceed to a decree, and the decree to be executed by a sale, without objection, were not bound by the sale. The rights as between them, or their successors, and the absent parties may not have been effectually determined, but why is it not sufficient to substitute the purchasers to the rights of those who were parties? Story, in his work on Equity Pleadings, states the rule as to when the objection for want of parties may be taken, and the consequences of not bringing the proper parties before the court, thus:

"If the proper parties are not made, the defendant may either demur to the bill, or take the objection by way of plea or answer; or (subject to the considerations above suggested), when the cause comes on to a hearing, he may object that the proper parties are wanting; or the court itself may state the objection, and refuse to proceed to make a decree; or, if a decree is made, it may, for this very defect, be reversed on a rehearing or on an appeal; or if it be not reversed, yet it will bind none but the parties to the suit, and those claiming under them, so that all the evils of a fruitless or inadequate litigation may sometimes be visited upon the successful party in the original suit, by leaving his title still open to future question and controversy." Section 75. If a decree is, in fact, made, and not reversed for want of necessary parties, there is no intimation here, that it would not be binding upon those who were parties, and suffered the decree to be made without objection. On the contrary, the inference is plainly the other way, for the learned author says, "it will bind none but the parties to the suit, and those claiming under them," and that the evils of a fruitless and inadequate litigation may be visited upon the successful party by leaving it open to future controversy. Had he supposed the parties brought in were not bound in any degree whatever, he would certainly have said so here, for the occasion called for it, whereas, what he did say, plainly indicates that he regarded the rule to be otherwise. The rule as thus stated is substantially repeated in sections 236 and 541. See, also, to the same effect, 1 Daniell, Ch. Pr.

341; Hickock v. Scribner, 3 Johns. Cas. 317; and cases cited in note 4 to section 236.

Judge Story further observes that, "the mere non-joinder of a proper party cannot avail the defendant in a bill of review, unless it appears to his prejudice; and there is the more reason for this rule, because the absent person is not barred by the decree, but may in another suit vindicate his rights." The case of Whiting v. Bank of U. S., 13 Pet. [38 U. S.] 14, cited, fully sustains the note. If the court would not sustain a bill of review on the application of one of the defendants, on the ground of error in proceeding to a decree in the absence of a party, it certainly ought not to be regarded as void as to those who are parties. In the case now in hand, suppose the absent party had chosen to acquiesce in the decree as originally entered, and had never attempted, or should never attempt, to reverse it, or set up any claim against it, in what particular would Mrs. Gray, or the other parties, who claim nothing in privity with the infant, have been injured or interested? They had their day in court, and their rights were disposed of; other parties succeeded to their interest, who thereby became jointly interested with the infant in their stead. In Whiting v. U. S. Bank, supra, the court say: "Breckenridge, the absent party, is not barred in the original decree, because he is no party thereto, and, therefore, his interest cannot be prejudiced thereby. But if they were, he, and he alone, has a right to complain, and to seek redress from the court; and not the plaintiffs, who are not his representatives, or intrusted with the vindication of his rights. Breckenridge has made no complaint, and sought no redress." These remarks would seem to apply as well to the position of the parties to this suit, and the infant defendant.

While I incline to the view that the sale is valid, as to all the other parties interested, even if void as to the infant, yet upon the view taken upon the main propositions involved, it is not necessary to decide the point now, and for that reason, I have not fully examined the authorities, and I do not desire to be understood as expressing a positive opinion upon it. I only allude to the point for the purpose of calling attention of plaintiff's counsel and the appellate court more particularly to it, in case the cause should be taken to the supreme court for review, and my view upon the main proposition be found erroneous.

My conclusion is, that the title to the premises in controversy appears to be in the defendant, Lucy B. Page, and that she is entitled to judgment. Let judgment be entered for defendant, with costs of suit.