FRANKEL *et al. v.* SATTERFIELD.

*Judgment—Collateral Attack—Jurisdiction—Foreign Attach-ment—Scire Facias—Defense.*

The judgment of a domestic court of record of general jurisdiction may be im-peached in a collateral proceeding; and, if want of jurisdiction of the subject-matter or of the parties, or of the *res* in an action *in rem*, be manifest from an inspection of the record, it will be regarded as a nullity, without having been so adjudged by a formal and direct proceeding for its vacation or reversal.

Where a judgment of a domestic court of record of general jurisdiction is void for want of jurisdiction apparent upon the record, it is, in legal effect, no judgment, and is unavailing for any purpose.

Upon the return of *nulla bona* upon a writ of foreign attachment under the statute of this state, the suit is at an end, and the court has no authority to proceed further. In such case, want of jurisdiction is manifest upon inspection of the record; and for this reason the original judgment is a nullity either as a judg-ment *in rem* or *in personam.*

Want of jurisdiction manifest upon inspection of the record of the judgment of a domestic court of general jurisdiction is a proper defense to a *scire facias* or other kindred proceeding for reviving and executing such a judgment, and may be taken advantage of under the plea of *nul tiel record.*

The rule that in a *scire facias* to revive a judgment no defense can be availed of which existed anterior to the judgment, is not applicable where want of jurisdic-tion appearing upon the record is urged against the validity of the judgment; and it is immaterial whether such want of jurisdiction be urged in the first or in a subsequent *scire facias* proceeding.

(*May 1, 1890.*)

SCIRE FACIAS on judgment in Superior Court.

*George V. Massey,* for plaintiffs.

*Henry R. Johnson* and *Edward Ridgely,* for defendant.

GRUBB, J.   This case is before us on a writ of *scire facias,* sued by the executors of Josiah Bochroch, deceased, to ob-tain execution of an alleged judgment entered in this court

against James Satterfield in favor of said Josiah Bochroch in his life-time. By agreement of parties this case is tried by the court without the intervention of a jury. At the hearing it was admitted that said plaintiff was dead, and that the said Zachariah Frankel and Theordore D. Rand were his duly-constituted executors. The entire record relating to the recovery of said alleged judgment, and to the proceedings subsequent thereto, was put in evidence and submitted to this court for inspection. It appears by this record that on August 10, 1863, upon his filing an affidavit that said James Satterfield was then a non-resident of this state, etc., a writ of foreign attachment was issued out of this court at the suit of said Josiah Bochroch, returnable to the October term, 1863, at which said writ was returned and indorsed "*Nulla bona*" by the sheriff of this county. The record also shows that on May 4, 1864, a judgment was entered in said suit against said Satterfied as of April term, 1864; that an affidavit of cause of action, made June 20, 1864, for $179.93, and interest, was filed; and that on June 27, 1864, the prothonotary ascertained the amount due on said judgment to be $191.75, with interest therefrom. The record also discloses that a *scire facias*, being No. 134 to October term, 1871, was issued in the name of said Bochroch, and in his life-time, against said Satterfield, to obtain execution of said judgment; at which term the sheriff returned said writ, indorsed, "Made known personally, Oct. 21, 1871;" that on October 23, 1871, said plaintiffs' affidavit and abstract of judgment were filed; that on October 27, 1871, upon motion of plaintiff's attorney, judgment was entered as of said October term, 1871; that on December 11, 1871, *fieri facias*, being No. 134 to April term, 1872, issued, upon which writ, at said term, the sheriff made return that he had "levied on goods and chattels as per inventory and appraisement annexed, [showing an appraisement at $600,] and said goods advertised to be sold; sale postponed by order of plaintiff's attorney, and proceedings stayed." The record also shows the issuance of *alias sci. fa.* No. 92 to April term, 1889, in the name of said executors of Josiah Bochroch, deceased, which brings the present case before us,

and which the sheriff duly returned, indorsed, " Made known personally."

No facts other than those above set forth appear of record, or otherwise, in this case. To this writ of *sci. fa.* in behalf of said executors the defendant pleaded *nul tiel record* as his sole plea, but it was agreed by the counsel for the respective parties that in this controversy any defense may be urged which could be legally presented under any plea properly pleaded in this *scire facias* proceeding, and as effectually as if the same had actually been duly filed therein, and that the plaintiffs may avail themselves of any matter which could be properly replied to any such plea. It is contended by the defendant that upon inspection of the record it appears thereby that the said alleged judgment, of which the plaintiff's seek to obtain execution, was rendered in a suit commenced by a writ of foreign attachment in which there was nothing attached, and no service of process upon, or appearance by, the defendant; that consequently the court had no jurisdiction over either the person or the property of the defendant, and therefore that said judgment is a nullity, and no valid execution can be issued thereon either against the property or the person of the defendant. The plaintiffs, on the other hand, contend that the record discloses a judgment rendered by a court of general jurisdiction, which cannot be controverted or impeached in a *scire facias* proceeding, or in any collateral action, but only in a direct proceeding to have said judgment set aside by this court which rendered it, or reversed by an appellate tribunal.

In the application of the established rule that the verity of the record and the validity of the judgment of a superior court of general jurisdiction cannot be collaterally impeached, a distinction has been observed between the want of jurisdiction and the irregular or erroneous exercise thereof. Where it appears by the record itself that the judgment of such a court has been rendered without jurisdiction either of the subject-matter or of the person of the defendant, or in actions purely or *quasi in rem* of his property, such

_judgment, and the proceedings for its enforcement, may, in collateral proceedings, be disregarded and treated as a nullity. As was said by the court in *Galpin v. Page*, 18 Wall., 350 : " It' is a rule as old as the law, and never more to be respected than now, that no ·one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such cita-tion and opportunity wants all the attributes of a judicial deter-mination. It is judicial usurpation and oppression, and never can be upheld where justice is justly administered. 　＊　　　＊　　　＊ Judgment without jurisdiction is unavailing for any purpose." Again, as was announced by the same court in *Voorhees v. Bank*, 10 Pet., 475 : " The line which separates error in judgment from the usurpation of power is very definite, and is precisely that which ·denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally when it is offered in evidence in an action concerning the matter adjudicated ·or purporting to have been so. In the one case, it is a record im-porting absolute verity ; in the other, mere waste paper." In the same case the court further observe : " The general and well-set-tled rule of law in such cases is that, when the proceedings are col-laterally drawn in question, and it appears on the face of them that the subject-matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same ·court to set them aside, or an appellate court. If there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right, and afford no justification, and may be rejected when collaterally drawn in question." And more recently the su-preme court of the United States in *Pennoyer v. Neff*, 95 U. S., 714, held that a personal judgment rendered in a state court, in an action upon a money demand against a non-resident of a state, without personal service of process upon him within the State, or his appearance in the action, is without any validity ; and no title

to property passes by a sale under an execution issued upon such a judgment; and that if non-residents have no property in the State, there is nothing upon which the tribunal can adjudicate. In delivering the opinion of the court in this case, Mr. Justice Field said: "Since the adoption of the fourteenth amendment to the federal constitution, the validity of such judgments may be directly questioned and their enforcement in the State resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law." Prior to the expression of this view *Pennoyer v. Neff*, it had been generally held by the courts of this country which had adjudicated the question that want of jurisdiction can only be shown by evidence appearing upon the record to impeach a judgment of a court of record of general jurisdiction in a collateral proceeding within the court or state where it was rendered. *Freem. Judgm.*, § 132 ; *Ferguson v. Crawford*, 70 N. Y., 253, per Rapallo, J. ; *Coit v. Haven*, 30 Conn., 190. In New York, but probably in few courts elsewhere, it was held that such domestic judgments might be collaterally impeached by plea and proof of want of jurisdiction by evidence *dehors* the record. *Ferguson v. Crawford*, 70 N. Y., 253. Formerly there was much contrariety of opinion in this State and elsewhere as to whether or not the record and judgment of a court of general jurisdiction of one State could be contradicted and impeached collaterally in a sister State of the Union, by extrinsic evidence of want of jurisdiction. *Pritchett v. Clark*, 3 Har. (Del.), 241; Id., 517; 4 Har. (Del.), 280; and 5 Har. (Del.), 63. This question was finally settled in the affirmative by the federal supreme court in *Thompson v. Whitman*, 18 Wall., 457, and this ruling was subsequently followed here in *Mitchell v. Ferris*, 5 Houst., 34. Since the expression by said court in *Pennoyer v. Neff* of the view above quoted respecting the due process clause of the fourteenth amendment, there seems to be a tendency on the part of the State courts to yield to that view, and to allow domestic

judgments *in personam*, as well as the personal judgments of courts of general jurisdiction of a sister State, to be collaterally impeached by extrinsic evidence of want of jurisdiction of the person. This view was adopted and followed by the supreme court of Massachusetts in the recent case of *Needham v. Thayer*, 147 Mass., 537 ; 18 N. E. Rep., 429, as hereafter it probably will be by other courts, in order that their judgments may not be drawn in question as violative of said clause of the federal constitution.

But, however courts may have differed as to whether the record may be collaterally attacked where it asserts or is silent as to jurisdictional facts, it is now established, by the overwhelming weight of authoritative adjudications, that the judgment of a domestic court of record of general jurisdiction may be impeached and be regarded as a nullity in a collateral proceeding, if want of jurisdiction of the subject-matter or of the parties, or of the *res*, in an action *in rem*, is manifest from an inspection of the record. To hold a judgment binding when the record disclosed a want of authority over the defendant would be to impeach, rather than to sustain, the absolute verity of the record ; for as the court declared in *Coit v. Haven*, 30 Conn., 198 : " If the want of jurisdiction is apparent on the record, it can be collaterally attacked, for then the jurisdiction is not presumed, or the presumption is repelled by the record itself, and the judgment is an absolute nullity if the want of jurisdiction in fact exists." The adjudication supporting this view are very numerous : *Coit v. Haven*, 30 Conn., 190 ; *Railroad Co. v. Weeks*, 52 Me., 456 ; *Ferguson v. Crawford*, 70 N. Y., 253 ; *Brickhouse v. Sutton*, 99 N. C., 103, 5 S. E. Rep., 380 ; *Adams v. Cowles*, 95 Mo., 501, 8 S. W. Rep., 711 ; *Furgeson v. Jones*, 20 Pac. Rep., 842, (Oregon supreme court, 1888) ; *White v. Manufacturing Co.*, 29 W. Va., 385, 1 S. E. Rep., 572 ; *Wall v. Wall*, 123 Pa. St., 545, 16 Atl. Rep., 598 , *Ex parte Sawyer*, 124 U. S., 200, 8 Sup. Ct. Rep., 482 ; *Settlemier v. Sullivan*, 97 U. S., 444 ; *Galpin v. Page*, 18 Wall., 350 ; *Freem. Judgm.*, § 116. .

Where a judgment of a domestic court of record of general

jurisdiction is void for want of jurisdiction apparent upon the record, it is, in legal effect, no judgment. In legal contemplation it has never had lawful existence. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are void. It cannot be the basis of an execution, or the foundation of a valid title to property purchased at a sale thereunder. No action on the part of the plaintiff, no inaction on the part of the defendant, can invest it with any of the elements of power or of vitality. It is unavailing for any purpose. It can be taken advantage of at any time, and in any court where it is offered as a conclusive adjudication between the parties; for an inspection shows that it is not such, because the court had no power, for manifest want of jurisdiction, to make an adjudication. Such a judgment, when collaterally drawn in question, may be disregarded and treated as a nullity, and need not be adjudged to be such by a formal and direct proceeding for its vacation or reversal. *Folger v. Slaughter*, 33 La. Ann., 342; *Bledsoe v. Erwin*, Id., 618; *Settlemier v. Sullivan*, 97 U. S., 444; *Eaton v. Badger*, 33 N. H., 228; *Green v. Clawson*, 5 Houst., 159; *Wall v. Wall*, 123 Pa. St., 545; 16 Atl. Rep., 598; Freem. Judgm., § 117. This doctrine has been recognized repeatedly in actions of trespass, ejectment, debt on judgments, and other collateral proceedings, wherein such judgments have been drawn in question. Both upon principle and authority, it is equally applicable to *scire facias* and kindred proceedings for reviving and executing such judgments. *Laurent v. Beelman*, 30 La. Ann., 363; *Conery v. Rochford*, Id., 692; *Folger v. Slaughter*, 33 La. Ann., 342; *Coit v. Haven*, 30 Conn., 190: *Sharon v. Terry*, 13 Sawy., 387; 36 Fed. Rep., 337, (U. S. C. C., Cal., 1888); *Huffsmith v. Levering*, 3 Whart., 115; Gibson, C. J. In this connection, the court, in *Laurent v. Beelman*, 30 La. Ann., 364, say : "A judgment rendered without citation to, or appearance of, defendant is absolutely null and void, It is not a judgment. It has no ex-

istence. It never drew the breath of life. You cannot keep alive that which never existed. *   *   * A void judgment cannot be revived." Again, it is well settled that, under the plea of *nul tiel record,* the validity of such a judgment may be impeached in a *scire facias* or other like proceeding for reviving and executing it, where want of jurisdiction is apparent upon the face of the record. This is the proper and only plea that brings before the court the validity of the record, and calls in question the existence of the judgment, as stated in the pleading of the party by whom it is brought forward. It denies that there is any legal record of the lawful rendition of such judgment. According to common-law principles, the plea of *nul tiel record* is to be decided only by inspection of the alleged matter of record. If the record produced shows that the court did not have jurisdiction of either the person of the defendant or the subject of the controversy, it must be disregarded, and the plea sustained; for, in such case, "there is no valid record upon which a recovery can be had, and, consequently, there is no such record as the plaintiff has set out in his declaration." *Thompson v. Emmert,* 4 McLean, 98; *Pritchett v. Clark,* 5 Har. (Del.), 73; Freem. Judg., § 459; *Jacquette v. Hugunon,* 2 McLean, 129; *Lincoln v. Tower,* Id., 476.

We now proceed to the consideration of the record produced in the case before us, in order to determine whether or not the original judgment rendered therein was a nullity, as the defendant contends, for want of the jurisdiction essential to its validity, apparent upon the face of the record itself. The record primarily discloses that said judgment was rendered *in a suit commenced by a writ of foreign attachment,* founded upon an affidavit that the defendant was a non-resident of the State, and after the sheriff's return of *nulla bona* thereon. It therefore appears by the record itself that this court, when it rendered said judgment, had no jurisdiction of either the property or the person of the defendant. That it had no jurisdiction of his property is expressly shown by the sheriff's return. That it had, and could have, none of his person appears by

necessary implication, and must be presumed in this case. In this State the institution of a suit by foreign attachment process is a statutory proceeding, which must be pursued conformably with the statutory provisions authorizing it. *Pennsylvania Steel Co. v. New Jersey S. R. Co.*, 4 Houst., 572. Here it is, in its original character, in the nature of an *ex parte* proceeding *in rem* to judgment of condemnation against the property bound by the foreign attachment; for, while it continues such, there is no appearance of the defendant, no defense whatever pleaded, no issue joined, and no trial had. If the defendant in such a writ voluntarily appears in court, and gives security in the form, and within the time, prescribed by law, the attachment is dissolved, is *functus officio*, has performed its office, and is at an end for all the purposes of the case in which it was issued; for the proceeding then becomes an action *in personam*, and assumes all the qualities and characteristics of such an action, and is to be prosecuted and conducted in all respects the same as if the defendant had been served with original process in it. *Wells v. Shreve's Adm'r.*, 2 Houst., 370, (per Houston, J.) But, under our statutory provisions, it is plain that, if no property has been attached by the writ, there can be no attachment to dissolve, no security given, no appearance by the defendant, no action *in personam*, and, consequently, for want of jurisdiction, no judgment *in personam*. Nor can there be a judgment *in rem* for a like reason. Upon the return of *nulla bona* upon the writ of attachment in the case before us, the suit was at an end, and the court had no authority to proceed further. Thereafter the case was *coram non judice*. *Cooper v. Reynolds*, 10 Wall., 308. Nor will the record in this case permit, much less warrant, any presumption that in some way the defendant might have been brought into court, or voluntarily appeared in this suit before said judgment was rendered therein, in response to a summons or other process than the writ of attachment. The statute contains no provision or authority for any such dual process, and the record utterly fails to show that any such was issued, or that the defendant appeared at

14

all in said suit at any time. The record shows but one suit only, and that it was instituted by foreign attachment alone, and upon an affidavit that the defendant then resided out of the State. This affidavit shows that the attachment was not issued after a return of *non est* to a summons or *capias* previously issued in the case. It must therefore be presumed that the defendant could not and did not appear in the action in which said judgment was rendered. While the presumption in favor of the proceedings of courts of record is indulged in relation to those jurisdictional matters concerning which the judgment roll is silent, yet no presumptions in support of the judgment are to be allowed in opposition to any statement contained in the record. When, therefore, the record shows that certain steps were taken to procure jurisdiction, and the law does not consider those steps sufficient, the judgment will be regarded as void for want of jurisdiction. *Freem. Judgm.*, § 125; *Galpin v. Page*, 18 Wall., 350; *Settlemier v. Sullivan*, 97 U. S., 444.

We must therefore conclude, in view of the legal principles and authorities heretofore referred to, that want of jurisdiction is manifest upon inspection of the record produced in this cause; that for this reason the original judgment was an absolute nullity, either as a judgment *in rem* or *in personam;* that it could not be the basis of a valid execution or other proceeding for its enforcement; and that want of jurisdiction manifest upon inspection of the record of the judgment of a domestic court of general jurisdiction is a proper defense to *scire facias* or other kindred proceeding for reviving and executing such a judgment, and may be taken advantage of under the plea of *nul tiel record.*

But the plaintiff contends that, although this be so, yet since the record also shows a *scire facias* on this alleged judgment, a service thereof upon the defendant, and a subsequent judgment against him under said *scire facias*, the defendant in the present and second *scire facias* cannot now take advantage of the want of jurisdiction manifest upon inspection of the record of the original

judgment. The plaintiff insists that, as the defendant had notice, and the opportunity to appear and show the want of jurisdiction, and the consequent nullity of the original judgment in the first *scire facias* proceeding, he is now estopped from so doing. This contention, however, rests upon the assumption that the question of the invalidity of said judgment for want of jurisdiction was passed upon by this court in the first *scire facias* proceeding, and decided adversely to the record, and in favor of the jurisdiction of the court and the validity of the original judgment, and that, therefore, that question is now *res adjudicata*. But, even if it could be conceded that the verity of the record of the original judgment could be contradicted for this purpose by extrinsic evidence, there is nothing appearing anywhere upon the entire record before us which warrants the conclusion, or even the inference, that this court, in the first *scire facias* proceeding, either had any evidence before it disproving the want of jurisdiction appearing on the face of the record, or had found that the court had, in reality, the jurisdiction essential to the validity of the original judgment when it was rendered. The record being silent in this respect, but affirmatively showing want of such jurisdiction, it must be presumed that the court did not, in rendering the *scire facias* judgment, pass upon the question of jurisdiction, but inadvertently overlooked, rather than disregarded, the record evidence of the want thereof, as it also must be held to have done in rendering the original judgment. And this presumption is supported by the fact, shown by the record itself, that the *scire facias* judgment was rendered at the return or appearance term of the writ, and upon an affidavit and abstract of the original judgment, for want of affidavit of defense. This plainly implies, under the practice here, that there were no pleadings raising, and no proof determining, the question of want of jurisdiction.

The default of the defendant to plead to the *scire facias*, and show the want of jurisdiction apparent of record against the original judgment, cannot be held to be such an admission to the con-

trary, or such a waiver, as will cure that fatal infirmity in the judgment at the time of its rendition, for the character and *status* of said judgment were fixed at that time. If void then, it could have no existence or force thereafter. As was said by the court in *Pennoyer v. Neff*, 95 U. S., 714: "The judgment, if void when rendered, will always remain void. * * * The validity of every judgment depends upon the jurisdiction of the court before it is rendered; not upon what may occur subsequently." The familiar rule that in a *scire facias* or a like proceeding to revive and enforce a judgment no defense can be availed of which existed anterior to the judgment is not applicable where want of jurisdiction appearing upon the record is urged against the validity of the judgment, as has been shown upon the authority of the cases already cited. Among the cases expressly noting this exception to said rule is that of *Sharon v. Terry*, 13 Sawy., 387; 36 Fed. Rep., 337 (1888); and in principle it is immaterial whether such want of jurisdiction be urged in the first or in a subsequent *scire facias* proceeding.

Upon examination of all the cases cited in behalf of the plaintiff to the contrary, it will be found that in none of them was want of jurisdiction at the rendition of the original judgment urged as a defense to the *scire facias*. The proceeding upon the present *alias scire facias* is not taken for the purpose of reviving and obtaining execution of the judgment rendered on the first *scire frcias*, but of the original judgment, which, according to the general current of authority, is not merely voidable, but absolutely void, and cannot be made the basis of a valid execution, nor be revived for that purpose by *scire facias* or any other proceeding whatsoever. Hence,

as the execution sought by the present writ of *scire facias* would, if issued, be invalid and prove nugatory, it would be absurd as well as unlawful to award it.   It is therefore considered and adjudged that the defendant have judgment.

PAYNTER, J., concurred.   COMEGYS, C. J., did not sit, as he was counsel in the original case.