BLYTHE et al. v. HINCKLEY et al.

(Circuit Court, N. D. California. December 6, 1897.)

1. JURISDICTION OF FEDERAL COURTS — PRESENTATION OF JURISDICTION OF QUESTIONS — MOTION TO DISMISS.

Under section 5 of the judiciary act of March 3, 1875, which imposes on the circuit courts the duty of dismissing a suit, if it appears at any time before final disposition that it does not really and substantially involve a controversy of which it may properly take cognizance, a motion to dismiss for want of jurisdiction may be considered by the court at any time before final judgment or decree.

2. SAME — SUIT TO ANNUL STATE JUDGMENT.

Complainants, claiming land in California, as collateral heirs of the deceased owner, filed a suit in a federal court to quiet title, against his natural daughter and others. By a second amended supplemental bill, they set up at length certain probate proceedings, to which they were parties, theretofore had in the superior court of San Francisco, which is a court of full and complete probate powers. These proceedings resulted in a final decree, affirmed by the state's supreme court, adjudging that the lands had descended to such natural daughter. Complainants then alleged that the state court was without jurisdiction to make this decree, because the daughter, at the time of her father's death, was a nonresident alien, incapable of becoming a naturalized citizen, and therefore incapable of inheriting, and because, further, complainants were the heirs of the deceased at the time of his death, and thereupon eo instante the title vested in them, so that no court could devest it. All the facts affecting the daughter's capacity to inherit appeared upon the face of the record in the state courts. Held, that the case came within the rule that a federal court will not assume jurisdiction of a suit to vacate or annul a decree of a state court for alleged want of jurisdiction appearing on the face of the record.

3. EQUITY JURISDICTION — POSSESSION OF LAND — REMEDY BY EJECTMENT.

A bill in equity was filed to obtain possession of land which at the time was in the possession of the public administrator, under state authority. Afterwards the land was surrendered to one of the defendants, to whom the title had been adjudged by the state court of probate jurisdiction. Still

later complainants filed a second amended supplemental bill. *Held* that, as the defendant was then in possession, there was an adequate remedy at law by ejectment, and the equity suit must be dismissed.

S. W. & E. B. Holladay (L. D. McKissick and Jefferson Chandler, of counsel), for complainants.

W. H. H. Hart (Robert Y. Hayne, Garber, Boalt & Bishop, Aylett R. Cotton, and W. W. Foote, of counsel), for defendant Florence Blythe Hinckley.

George W. Towle, Jr. (E. S. Pillsbury and Lorenzo S. B. Sawyer, of counsel), for defendant Blythe Co.

MORROW, Circuit Judge. This is a motion to dismiss the action as it is set forth in the second amended and supplemental bill of complaint. The first ground of the motion is that it appears that the court has no jurisdiction of the matters and things alleged in the bill of complaint. A preliminary objection has been interposed to the consideration of the question of jurisdiction on this motion. The objection must be overruled. Section 5 of the act of March 3, 1875 (18 Stat. 472), imposes upon the circuit court the duty of dismissing a suit, if it appears at any time after it is brought, and before it is finally disposed of, that it does not really and substantially involve a controversy of which it may properly take cognizance. Robinson v. Anderson, 121 U. S. 522, 7 Sup. Ct. 1011; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289.

The second amended and supplemental bill of complaint contains a recital of the proceedings in the superior court of the city and county of San Francisco with respect to the estate of Thomas H. Blythe, deceased. It alleges, among other things, that the defendant Florence Blythe Hinckley was born in England, the bastard child of an unmarried woman; that at the time of her birth her mother was a resident of England, and a subject of Victoria, queen of Great Britain and Ireland; that she remained in England at all times until the death of Thomas H. Blythe; that she came to California for the first time in 1883; that she was then an infant, about 10 years of age, ineligible to become a citizen of the United States, and, when she arrived in California, she was a nonresident alien. And, among other things, the bill alleges:

"That after the death of said Thomas H. Blythe, as hereinbefore alleged, the public administrator of the city and county of San Francisco took charge of the estate of said Blythe, and entered upon the administration of the same. * * * That, after the said Florence first came to San Francisco, one James Crisp Perry, who was then and there a subject of the queen of Great Britain, was appointed by said superior court of the city and county of San Francisco guardian of said Florence; and thereafter, as such guardian, he commenced a proceeding in said superior court, in the name of said Florence, to have the court ascertain, adjudge, and determine the heirship to the said Thomas H. Blythe and the ownership of his estate, and, in substance, that she (said Florence) was the daughter and the sole heir of said Thomas H. Blythe, under and by virtue of said sections 230 and 1387 of said Civil Code, or under and by virtue of one or the other of said sections; and also, by virtue thereof, to have the said court adjudge and decree that the said Florence was the sole heir at law of the said Thomas H. Blythe, and entitled to inherit his estate. That your orators appeared in said action or proceeding, and filed their answer

and cross complaint therein, denying and contesting the right and title of said Florence, and claiming for themselves to be heirs of said Blythe. That thereafter such proceedings were had in said court in the said cause that it was for the first time made to appear plainly to the court, upon the record, that said Florence was an illegitimate child, that she was born in England, and that neither she nor her alleged mother, nor the mother nor father of the alleged mother, had ever been within the United States, or eligible to become citizens thereof, until after the death of the said Thomas H. Blythe. And your orators, in that behalf, allege that when it was so made plainly to appear to said court that the said Florence was a nonresident alien, and had never been a bona fide resident of the state of California, until after the death of said Thomas H. Blythe, and descent cast, it was the duty of the court to dismiss the petition or complaint, or both, of the said Florence, in so far as the title and descent of the above-described real estate was involved or affected, for want of jurisdiction in said court to adjudge or decree that said Florence was capable of inheriting said real estate as an heir at law of said Thomas H. Blythe.

"Your orators further say that, in the said proceeding wherein the said Florence was petitioner and plaintiff, it was at the trial thereof attempted to be proven by her and in her behalf that the said Thomas H. Blythe, after the birth of the said Florence, and before his death, and while he was living in the state of California, and while the said Florence was living in England as aforesaid, attempted to legitimate the said Florence, by adoption, under said section 230 of the Civil Code, or to institute her as his heir, under said section 1387 of said Code. And your orators say that the parties went to trial, and the said superior court, without jurisdiction so to do, decided in substance and effect that said Thomas H. Blythe had in his lifetime adopted and legitimated the said Florence; that from said judgment your orators appealed to the state supreme court, and in that court the cause was argued, and by a divided court it was, without any jurisdiction so to do, in substance and effect decided that said Thomas H. Blythe had not adopted or legitimated the said Florence, under or in conformity with said section 230 of the Civil Code, but that he had constituted her his heir, under and pursuant to the provisions of section 1387 of said Civil Code. And in that behalf your orators say that neither the said superior nor the said supreme court considered, adjudged, or construed, in making its decision, the said section 17 of article 1, and said section 22 of article 1, of the constitution of the state of California; nor were the rights of your orators, under those sections, adjudged or determined by either of said courts, or by its decision. And in that behalf your orators say that said last decision made by a divided court was and is contrary to and in violation of the constitution of the state of California, and was and is contrary to and in direct conflict with numerous former decisions of said supreme court, which former decisions had long before. established a rule of property in said state, which rule had excluded aliens and foreigners who occupied the same. or similar status as did said Florence from inheriting real estate in the state of California. And in that behalf your orators further say that they are informed and believe, and upon their information and belief say, that they are not precluded by the said conflicting decisions of the state court, nor by anything contained in the record of the proceedings upon which said last decision was made, from prosecuting this, their action. in this court; nor is this court precluded from entertaining jurisdiction of this action, and deciding it upon its merits; nor is said last decision binding or obligatory, as authority or otherwise, upon this court. And your orators further say that heretofore, to wit, on June 18, 1894, said Florence, calling herself Florence Blythe, filed in said superior court, in the matter of the estate of said Thomas H. Blythe, deceased, her petition for distribution, praying for an order of said court distributing to her the share of said estate to which she claimed to be entitled, to wit, the whole of said estate, embracing the real property first above described, to which she alleged herself to be entitled only as sole heir at law and sole next of kin to said Thomas H. Blythe, deceased. That in her said petition it was made plainly to appear to said court that said Florence, the petitioner, was a nonresident alien, and was not and had never been a bona fide resident of the state of California until after the death of said Thomas H. Blythe and

descent cast. And your orators say that it was the duty of said court to dismiss the said petition for distribution of said Florence in so far as the title and descent of the above-described real estate was involved or affected, for want of jurisdiction in said court to adjudge or decree that said Florence was capable of inheriting said real estate as heir at law of said Thomas H. Blythe, or to distribute said estate to her. That your orators answered said petition for distribution, and thereby took issue upon all the material averments thereof, and therein claimed said estate as heirs of said Blythe. That afterwards the court, sitting in probate, without right or jurisdiction so to do, heard said petition for distribution: and afterwards, on October 26, 1894, said court went through the idle form of granting a decree of distribution; and on that day a document which falsely purported to be a decree of distribution of nearly all the property of said estate of Thomas H. Blythe to said Florence, embracing all of the real property above described, was signed by the judge of said court, and filed by the clerk, and on the next day thereafter was recorded in the minute book of said court. And your orators say that said pretended decree of distribution was and is null and void, for want of jurisdiction in said court to make the same. * * *

"And your orators further say that heretofore, and since the filing of the original bill herein, to wit, on January 2, 1896, said Florence, calling herself Florence Blythe Hinckley, filed in said superior court, in the matter of the estate of Thomas H. Blythe, deceased, her petition for final distribution to her of said estate, wherein and whereby she prayed for an order of said court distributing to her the residue of said estate then remaining in the hands of the public administrator, amounting to the sum of $89,842.94; the same and the whole thereof being the rents accrued from the real property aforesaid, to which she alleged herself to be entitled only as the sole heir at law and sole next of kin to said Thomas H. Blythe, deceased That in her said petition it was made plainly to appear to said court that said Florence, the petitioner, was born and continued to be a nonresident alien until after the death of said Blythe, and was not and had never been a bona fide resident of the state of California until after the death of said Thomas H. Blythe and descent cast. And your orators say that it was the duty of said court to dismiss said petition for final distribution to said Florence, in so far as the above-described real estate and said rents were involved or affected, for want of jurisdiction in said court to adjudge or decree that said Florence was capable of inheriting said real estate as heir at law of said Thomas H. Blythe, deceased, or to distribute said estate to her. That notice of said petition was given to your orators, who were notified and invited to come into court, and show why said petition should not be granted. That, in obedience and response to said notice, your orators did on January 16, 1896, file in said court their answer, wherein and whereby they denied the right of the said Florence to have said rents distributed to her, and claimed that they were the heirs and next of kin of said Thomas H. Blythe, deceased, and entitled to said rents. That afterwards, on the 16th day of January, 1896, said court, sitting in probate, without right or jurisdiction so to do, heard said petition for final distribution, and wrongfully struck from the files the answer and opposition so theretofore filed by your orators; and when your orators arose, and attempted to object to and to show cause why said petition should not be granted, said court refused to permit your orators to be in any wise heard. And afterwards, on January 18, 1896, said court went through the idle form of granting a decree of final distribution; and on that day a document which falsely purported to be a decree of final distribution, distributing to said Florence all the residue of said estate, based upon said petition last aforesaid, was signed by the judge of said court, and filed by the clerk, and the same was thereafter recorded in the minute book of said court. And your orators say that said pretended decree of final distribution was and is null and void for want of jurisdiction in said court to make the same. And your orators further say that, at the date of filing the original bill herein, neither party hereto was in possession of the land hereinbefore described, but the same was in the hands and possession of the public administrator of the city and county of San Francisco, state of California. But since the filing of said bill, to wit, December 4, 1895, said Florence has secured possession of said real property, and the whole thereof,

through said pretended judgment and decrees aforesaid, and without any other or further right than as above set forth, and she is now in the possession of the same. * * *"

It will be observed that the bill charges that the proceedings in the superior court of San Francisco, and in the supreme court of the state, respecting the right of the defendant Florence Blythe Hinckley to inherit the estate of Thomas H. Blythe, deceased, were without jurisdiction in either court to adjudge or determine. This charge of want of jurisdiction in the state court appears to be a conclusion drawn from the averments of the bill, and must be disregarded unless the facts alleged are sufficient to support the charge. It is based primarily upon the alleged want of capacity on the part of the defendant Florence Blythe Hinckley to inherit the estate of Thomas H. Blythe, by reason of the fact that she was an illegitimate child, and an alien at the time of his death; but it is contended, further, that the state court, in adjudging that she had the capacity to inherit, destroyed a rule of property in the state, after the estate had vested by descent in complainants. Upon this claim the complainants insist that they are entitled to maintain this action to recover their several interests in an estate in which they allege the defendants are in possession of under a void judgment.

The first inquiry is as to the jurisdiction of the state court to hear and determine the controversy as to the right of inheritance, and the conclusive character of the judgment of that court between the same parties in the present action.

In the Broderick Will Case, 21 Wall. 503, a suit in equity was brought in the circuit court of the United States for the district of California, by the alleged heirs at law of David C. Broderick, to set aside the probate of his will, and have the same declared a forgery, and to recover the said estate, much of which consisted of lands in the city of San Francisco. Demurrers were interposed, and upon argument the bill was dismissed. An appeal was taken to the supreme court, where the decree was affirmed. In speaking of the jurisdiction of the probate courts, the court said:

"The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be affected with least chance of injustice and fraud; and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers which are given to the probate courts, and the modes provided for reviewing their proceedings. And one of the principal reasons assigned by the equity courts for not entertaining bills on questions of probate is that the probate courts themselves have all the powers and machinery necessary to give full and adequate relief."

After reviewing the authorities establishing the general rule that a court of equity will not interfere with probate proceedings, the court proceeds to consider the jurisdiction of the probate courts of California, and concludes with this observation:

"In view of these provisions, it is difficult to conceive of a more complete and effective probate jurisdiction, or one better calculated to attain the ends of justice and truth."

Under the present constitution of the state of California, jurisdiction of all matters of probate is vested in the superior court, a court of general jurisdiction.

In Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, a bill in equity was brought in the circuit court of the United States for the Eastern district of Pennsylvania. The object of the bill was to charge the defendant, as the former owner of a tract of land in Wisconsin, as the trustee for complainants with respect to said ownership, and have him account for the value of the lands, and for all the rents and profits received by him and his grantees, and for all loss and damage resulting to the property by reason of the cutting of timber thereon by the defendant and his grantee, and for any other loss occasioned by the defendant's acts. The complainants were the collateral heirs of Robert M. Simmons, who died unmarried and intestate, in Louisiana, about the year 1830. At the time of his death he was seised and possessed of an inchoate land claim in Louisiana, for 640 acres, founded upon a purchase of a settlement right conferred by an act of congress. For reasons involving no fault on the part of Robert M. Simmons or any of his heirs, the claim remained unlocated and unsatisfied until congress passed an act in 1858, under which the surveyor general of the district in which the claim was situated was authorized, upon satisfactory proofs, to issue to the claimants or his legal representatives a certificate of location for a quantity of land equal to that so confirmed and unsatisfied; and it was provided that this certificate might be located upon any of the public lands of the United States subject to sale at private entry, etc. By the law of Louisiana, the heirs of a decedent become seised and possessed of his whole estate, both real and personal, immediately upon his death, subject only to their right to renounce said succession, or to the right of creditors to require administration thereof in case of nonaction of the heirs. In 1872 such action was taken in a parish court in Louisiana, at the instance of a stranger to the estate, that the judge of the court issued an order purporting to appoint an administrator of the estate of Robert M. Simmons, directing an inventory of the estate to be made, and a sale of the property belonging thereto to pay debts. An inventory was returned, and a sale of the land claim made, in accordance with the order. The claim was sold for $30, which sum was wholly used and expended in the payment of the costs and expenses of the pretended administration, no other debts than those created thereby existing or being shown to exist. This claim was thereupon presented to the surveyor general of Louisiana by the purchaser, claiming to be the legal representative of Robert M. Simmons; and the surveyor general thereupon prepared certificates of location for the claim, and, in the course of proceedings authorized by the act of congress, certain of the certificates were located upon lands in Wisconsin, and a patent therefor issued by the United States, in the name of Robert M. Simmons, or his legal representatives. By several mesne conveyances, the lands in question passed to the defendant, who neg-

lected to pay the taxes assessed thereon, and the lands were conveyed for the unpaid taxes; but, while the defendant was in possession of the land, he removed therefrom timber and other valuable products, and sold the same for large sums of money, and received large rents and profits from the lands, which it was the object of the bill to recover. All the proceedings in relation to the claim in suit, the cutting of the timber, and all other acts in any wise connected with the claim, were done and had without the knowledge of the complainants or of any person interested in the claim. The bill alleged that the Louisiana court was without jurisdiction, and that its proceedings in the matter did not conform to the statute under the authority of which it assumed to act; and the prayer of the bill was that complainants might be adjudged and decreed to be the true legal representatives of Robert M. Simmons; that the proceedings in the parish court in relation to the sale of the land claim be adjudged null and void; and that an account be taken, etc. The defendant demurred to the bill; the demurrer was sustained, and the bill dismissed. An appeal was taken to the supreme court, where the judgment of dismissal was affirmed. The questions discussed in the opinion of the court were the validity of the judgment of the parish court of Louisiana ordering the sale of the unlocated land claim, the legality of the sale, and the fraud by which it was alleged the judgment was procured. The court reviews the authorities upon the questions involved in the case, and arrives at the conclusion that the parish court had a clear and unquestionable jurisdiction of the intestate estate or succession of Robert M. Simmons; that whatever errors there were in the proceedings could have been corrected on appeal or avoided in a direct action of annulment, but could not be made the grounds on which the decree of the court could be collaterally assailed.

In Railway Co. v. Burke, 13 C. C. A. 341, 66 Fed. 83, the complainant, claiming to be the owner by inheritance of a lot of land in the city of Little Rock, Ark., filed a bill of complaint against the Little Rock Junction Railway, to establish his title thereto, and to recover the premises from the possession of the defendant. The bill averred, in substance, that the railway company was in possession of the land under a conveyance from one S., who claimed to have purchased the property at a sale for overdue taxes, which sale had been made in obedience to a decree of a state court of Arkansas in Pulaski county, having full chancery powers; that the title thus acquired by the railway company from S., its grantor, was unfounded and void, for the reason that the court never in fact acquired jurisdiction over the complainant to condemn and sell the property for overdue taxes; that service of process was by publication; and that notice was not properly given. The defendant denied the material allegations of the bill touching the jurisdiction of the chancery court, and averred that said court acquired full jurisdiction of the case, and of all persons having any interest in the property. The defendants also pleaded that the case made by the bill of complaint was not a case of which the federal circuit court, sitting in equity, could properly take cognizance. The circuit court rendered a decree in favor of the complainant, whereby it adjudged that his title was not devested by the sale under the

decree of the state court. On appeal to the circuit court of appeals, the decree of the circuit court was reversed, and the cause remanded, with directions to the circuit court to vacate its decree and dismiss the bill of complaint, without prejudice to the complainant's right to take such action in the state court as he might deem proper. Judge Thayer, speaking for the circuit court of appeals, and referring to the testimony introduced in the circuit court relating to the publication of notice of the suit in the state court, said:

"That the trial of the case clearly resolved itself into a review of the proceedings of Pulaski chancery court for matters apparent on the face of the record."

After pointing out the various proceedings that might have been taken by the complainant in the state court to correct the error of the chancery court, Judge Thayer said:

"We think, therefore, that it may be accepted as a general rule, in the absence of any statutory provisions on the subject, that the proper forum in which to seek relief, otherwise than by an appeal or writ of error, against a judgment or decree which is alleged to be void on the face of the record, is in the court by which such judgment or decree was rendered, and that other courts of co-ordinate jurisdiction have no authority to grant relief in such cases. But, whatever may be the correct rule in this respect as between state courts of equal authority, it is manifestly true, we think, that, owing to the peculiar relations which exist between state and federal courts of co-ordinate jurisdiction, the federal circuit court ought not to review, modify, or annul a judgment or decree of a state court, unless such review is sought on a state of facts not disclosed by the record of the state court, which, for that reason, has not undergone judicial examination. The sufficiency of the service, whether by publication or otherwise, to support a final adjudication, and every other matter apparent upon the face of the record, are supposed to have received due consideration by the court rendering a judgment or decree before the same was entered. Therefore, when a suit is instituted to nullify a decree for matters disclosed by the record, and for no other reason, the proceeding is not a new suit, but is essentially in the nature of an appeal from the original adjudication or a bill of review. The federal courts should remit proceedings such as these to the judicial tribunal of the state which made the record that is to be reviewed or impeached."

Reference is then made to the fact that the bill had been brought to quiet complainant's title against the claims of the defendant, and that the prayer of the bill was that the complainant might be restored to the possession of the premises wrongfully withheld from him by the defendant, and that the bill was filed after the alleged void decree of the chancery court was fully executed, and after the defendant had acquired a title thereunder. Commenting upon this feature of the case, the court does not find in it a sufficient reason for holding that the circuit court was authorized to review the proceedings of the chancery court, and to afford relief on the ground that the complainant was without means of redress for the alleged wrong in the state court, by which the supposed void decree was rendered; the court holding that not only was the bill of review open to the complainant as a remedy, but the action of ejectment, and upon this point the court says:

"Moreover, as the present action was brought and prosecuted upon the theory that the decree of the chancery court is utterly void when tried by the record, it follows that the remedy by ejectment was also open to the com-

plainant, for no doctrine is better established than that a sale under a decree that was rendered without jurisdiction confers no title, and that such a decree is open to impeachment in any collateral proceeding when the want of jurisdiction is apparent upon the face of the record,"—citing Galpin v. Page, 18 Wall. 350; Coit v. Haven, 30 Conn. 190; Adams v. Cowles, 95 Mo. 501, 8 S. W. 711; Frankel v. Satterfield (Del. Super.) 19 Atl. 898; Furgeson v. Jones (Or.) 20 Pac. 842; Black, Judgm. §§ 278, 407, and cases there cited.

Judge Sanborn concurred specially in the judgment of the circuit court of appeals, on the ground that:

"A bill of equity cannot be maintained in the national courts to recover possession of real property in cases in which there is no impediment to an action of ejectment."

In Barrow v. Hunton, 99 U. S. 80, the supreme court draws a distinction between a suit to set aside a decree on evidence outside of the record, establishing fraud in obtaining the decree, and a proceeding to vacate a judgment for matters disclosed upon the face of the record. In that case Hunton had recovered a judgment by default in a state court of Louisiana. Subsequently the judgment debtor filed a petition in the state court, praying for a decree to nullify the judgment, on the ground that he had not been lawfully served with process. Hunton caused the proceedings to nullify the judgment to be removed to the circuit court of the United States, where the question arose whether the federal court could lawfully entertain jurisdiction of the proceedings. In discussing that question, Mr. Justice Bradley, in delivering the opinion of the court, said:

"The question presented with regard to the jurisdiction of the circuit court is whether the proceeding to procure [the] nullity of the former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the circuit courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible. On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding; and according to the doctrine laid down in Gaines v. Fuentes, 92 U. S. 10, the case might be within the cognizance of the federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

These cases clearly establish the doctrine that the courts of the United States will not take jurisdiction of a case to correct an error appearing on the face of the record in a judgment rendered in a state court, nor will they take jurisdiction of a case the object of which is to set aside a judgment of a state court void upon its face. Now, if we examine the present bill, we find that the latter object is its substantial scope and purpose; and, to accomplish this object, there is set forth,

with great particularity, the record and proceedings in the superior and supreme courts of the state in a controversy between the same parties, concerning the same subject-matter, together with references to the treaty of 1794 between Great Britain and the United States, sections of the constitution of the state, and sections of the Civil Code of California, relating to the rights of foreigners and aliens to take real estate by succession as heirs at law of deceased citizens of California; and the question arises whether, upon that record, the contention of the complainants takes the case out of the general rule limiting the jurisdiction of the circuit court to interfere in such cases. This contention, fully stated, is: First, that the state court had no jurisdiction to award the estate of Thomas H. Blythe to a nonresident alien, who was ineligible to become a naturalized citizen of the United States; second, that, under a settled rule of property in existence in this state at the death of Thomas H. Blythe, and descent cast, the complainants were his heirs at law, and the title to the real estate vested in them eo instante on the death of Blythe, and no court could afterwards devest that title, and vest it in another; third, that this court is not precluded by the decision of the state supreme court made in 1892 in the case of Blythe v. Ayres, 96 Cal. 552, 31 Pac. 915.

The claim that the superior court of the state had no jurisdiction to award the estate of Thomas H. Blythe to the defendant Florence Blythe Hinckley, because at his death she was a nonresident alien, and ineligible to become a naturalized citizen of the United States, appears to involve a federal question, for the reason that the eligibility of a nonresident alien to inherit real property in any of the states of the Union may be a matter of treaty regulation between the federal government and foreign powers, and the states are forbidden to enter into any treaty stipulations; but the complainants do not contend for jurisdiction in the circuit on that ground. Moreover, the tribunal to review the decision of a state court, involving such a question, would be the supreme court of the United States, and that court has determined that it has no jurisdiction for that purpose in this case. Blythe v. Hinckley, 167 U. S. 746, 17 Sup. Ct. 991. This necessarily leaves the question of inheritance to be determined by the state law and by the state courts. The novel doctrine that, in the absence of treaty regulations upon the subject, the right of an alien to inherit does not exist, and that the courts of the state, otherwise competent to pass upon this question, are without jurisdiction, cannot be entertained at this period of our judicial history. Some consideration must be given to the fact that heretofore this whole question of inheritance has, by judicial acquiescence, been left to the jurisdiction of the states, and has become a general rule of property right. This being so, it follows that the jurisdiction of the circuit court cannot be maintained, because the state court, in the exercise of its general jurisdiction, determined the eligibility of the defendant Florence to inherit an estate which that court was called upon to distribute under the laws of the state.

The other propositions contended for by complainants are, for the same reason, deemed insufficient to take this case out of the general

rule that, after a court of a state, with full jurisdiction over property in its possession, has finally determined all rights to that property, a court of the United States will not entertain jurisdiction to annul such decree, and disturb rights once definitely determined.

But there is still another reason why this action cannot be maintained. It appears from the bill of complaint that when the original bill was filed, on December 3, 1895, neither party was in possession of the land in controversy, but that it was in the hands of the public administrator of the city and county of San Francisco. Section 738 of the Code of Civil Procedure of California provides that "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." In Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, it was held, under a statute similar to this in Nebraska, that a suit in equity could be maintained against a party claiming an adverse interest in real property, where neither party was in possession, and where it was "unoccupied, wild, and uncultivated land"; and it was explained that an action of ejectment would not lie in such a case, because the land had no occupant,—in other words, it was vacant land. In the present case, not only did the land have an occupant when the original bill was filed, but it was in the possession of the public administrator under the authority and jurisdiction of the superior court of the state. "An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. It is the possession of the court, and it is possession which cannot be disturbed by any court." Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906. It follows that, while the possession of the administrator continued, no decree for the possession of the real property in his custody could have been entered in favor of the complainants. But it appears that, on the next day after the filing of the original bill, the defendant Florence secured possession of the property, and she has ever since continued in the possession of the same. She was therefore in possession when the second amended and supplemental bill was filed; and against her, at that time, so far as appears from the bill of complaint, a suit in ejectment by the complainants, claiming to be heirs of Thomas H. Blythe, would have afforded a plain, adequate, and complete remedy. Section 1452 of the Code of Civil Procedure of California provides that heirs may themselves, or jointly with the executor or administrator, maintain an action for the possession of real estate. Such an action by the heir alone was sustained in Crosby v. Dowd, 61 Cal. 557, 600. And see, also, Janes v. Throckmorton, 57 Cal. 368. When the right set up by the plaintiff in a court of the United States is a title to real estate, and the remedy sought is its possession and enjoyment, the remedy should be sought at law, where both parties have a constitutional right to call for a jury. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276; Sanders v. Devereux, 8 C. C. A. 629, 60 Fed. 311; Railway Co. v. Burke, 13 C. C. A. 341, 66 Fed. 83. As the view here taken of this feature of the case disposes of the motion to dismiss the bill, it will not be necessary to consider the question of parties and diverse citizenship. The bill of complaint will be dismissed.