In re CONTINENTAL TRANSPORTATION & OIL CO.

(District Court, D. Delaware. December 16, 1926.)

No. 370.

1. Attachment ⬤⟹184—Continued possession of attached property by court is prerequisite to continuance of lien.

Continued possession by the court of attached property is essential to continuance of the lien of the attachment.

2. Attachment ⬤⟹165—Seizure of certificates not essential to attachment of corporate stock.

Actual seizure of certificates of corporate stock is not essential to attachment of the shares, and on such attachment possession passes constructively to the court, where it remains until the stock has been dealt with, unless some act of the attachment plaintiff discloses an intention to abandon the lien, which is thereby dissolved.

3. Bankruptcy ⬤⟹216—Trustee, having sold stock which was under attachment in state court, held required to pay so much of proceeds as required to pay the judgment into that court for distribution.

Shares of stock owned by bankrupt were attached more than four months prior to the bankruptcy in an action in a state court, which

went to judgment before the bankruptcy. The certificates of stock were retained by bankrupt and passed to his trustee, who, with consent of the attachment plaintiff, sold the same and received the proceeds. *Held* that, no act of the attachment plaintiff having worked a dissolution of the lien, possession of the stock remained constructively in the state court; that the trustee should pay into that court the amount required to satisfy the judgment and obtain a surrender of its possession, leaving it to that court, rather than to the court of bankruptcy, to determine conflicting claims to the judgment by assignees, though they had applied to the bankruptcy court for such action.

In Bankruptcy. In the matter of the Continental Transportation & Oil Company, bankrupt. On review of order of referee. Matter remanded to referee for modification of order.

Josiah Marvel, of Wilmington, Del., for trustee.

E. Ennalls Berl, of Wilmington, Del., for Wm. J. Payne.

George N. Davis, of Wilmington, Del., for Henry Schomber.

Albert J. Baruth, of New York City, and James I. Boyce, of Wilmington, Del., for Job Brothers & Co., Limited.

MORRIS, District Judge. The questions arising upon this petition to review the order of the referee in bankruptcy concern the disposition of the proceeds of sale of 2,500 shares of the capital stock of Empire Transportation & Oil Corporation. The shares were sold by the trustee in bankruptcy of Continental Transportation & Oil Company, and the proceeds of sale are now in his hands. The circumstances surrounding the sale were that, more than four months before the filing of the petition in bankruptcy, W. & S. Job & Co., Inc., a creditor of the Continental Company, instituted attachment proceedings in the law and equity court of the city of Richmond, Va., to recover judgment upon its claim. In that proceeding the shares of the capital stock of the Empire Company, sold by the trustee, were duly attached, and the proceedings carried to final judgment on December 2, 1920, against the Continental Company and in favor of the Job Company in the sum of $50,004.78. On March 15, 1921, an order was entered therein, directing the Continental Company to deposit to the credit of the court the certificates of stock for the shares attached.

That order was not complied with, but on April 2, 1921, the Continental Company filed its voluntary petition in bankruptcy in this court and was duly adjudged a bankrupt.

On April 19, 1921, the Job Company filed with the referee its proof of claim wherein it set out that it "claims the benefit of the liens of said attachment." In May, 1925, the trustee in bankruptcy presented to the referee his petition for instructions wherein he set out that within four months of the date of the adjudication the Continental Company entered into a minority stockholders' protective agreement with respect to the shares of the capital stock of the Empire Company owned by it; that the petitioner was of the opinion that such protective agreement was advantageous to the creditors of the bankrupt, should be affirmed by him, and that he should deliver to the stockholders' protective committee the certificates for the shares of stock under the terms of the agreement for the purpose of having the stock disposed of thereunder. The petition was set down for hearing and the creditors notified.

Counsel for Job & Co., on May 25, 1925, wrote the referee thus:

"We approve of the acceptance of the stockholders' agreement, and it is our view the trustee should be directed to deliver the stock and participate under the terms of the agreement, provided the lien of our client, W. & S. Job & Co., Inc., is subrogated to the proceeds which the trustee will receive."

The referee, on May 27, 1925, entered an order authorizing and directing the trustee "to affirm and accept said stockholders' protective agreement, and take such steps and perform such acts as may be necessary for the purpose of securing unto himself and the creditors of the bankrupt the benefits thereof." Thereupon the trustee delivered to the protective committee the certificates for the shares of Empire stock, together with assignments thereof duly executed. Subsequently, the committee sold the shares of Empire stock in their hands under the terms of the protective agreement and remitted to the trustee in bankruptcy therefor a sum of money largely in excess of the judgment obtained against the Continental by the Job Company.

The questions arising here pertain, however, not to the excess, but to the amount necessary to satisfy the Job judgment, with interest and costs. To that fund there are several conflicting claimants, each setting up a right under one of several asserted assignments by Job & Co. One of these claimants is Guy B. Hazelgrove, who, on June 10, 1925, filed with the referee proof of assignment on February 11, 1922, by the Job Company to Edward G. Graeber, and by Edward G. Grae-

ber to him, of the "proceeds of recovery from bankrupt estate of Continental Transportation & Oil Corporation of Wilmington, Del., and Richmond, Va., to the extent of $12,240, with interest thereon at 6 per centum until paid." Another claimant is Henry Schomber. On June 4, 1925, he filed with the referee an assignment to him, dated July 2, 1924, of the entire Job claim, and on July 1, 1925, filed his petition, praying for an order upon the trustee to pay to him the amount of the Job claim, with interest to the date of payment. Upon proceedings had before the referee, touching the respective rights of Hazelgrove and Schomber, the referee found in favor of Schomber, and ordered the trustee to pay that claim. It is to review that order that the petition bringing the case here was filed.

But since the filing of the petition for review a third claimant of the fund, Job Bros. & Co., Limited, of St. Johns, New Brunswick, has filed its petition, praying for leave to intervene in the cause. For reasons deemed sufficient, the permission sought was granted. Job Bros. & Co., Limited, sets up that since September, 1921, it has been, by assignment, the owner of all the right, title, and interest of the Job Company to the moneys now in the hands of the trustee in bankruptcy, and that it was not until July, 1926, that it learned that the shares of stock attached had been sold by the trustee in bankruptcy, and that the proceeds of sale were in his hands for distribution. It prays that the matter be remanded to the referee to afford it an opportunity to establish its right to the monies in question.

If the proceeds of sale representing the amount of the Virginia judgment must or should be paid by this court through the trustee in bankruptcy to those persons who are legally or equitably entitled thereto; there seems to be no reason why the prayer of the petition should not be granted. But must or should this court pay the fund directly to the assignee or assignees of the Virginia judgment, first determining their respective rights thereto, or do law and justice require that the fund be paid by the trustee into the registry of the Virginia court, to be paid out by it in accordance with its findings of law and fact? The answer to these inquiries is to be found, not alone in principles of comity, but primarily in those inherent in the law of attachments. Of these one of the most fundamental is that possession of the attached property by the court out of which the attachment issues is an indispensable prerequisite to jurisdiction in attachment proceedings. Pennoyer v.

Neff, 95 U. S. 714, 24 L. Ed. 565; Frankel v. Satterfield, 9 Houst. (Del.) 201, 19 A. 898.

[1, 2] Continued possession by the court is a like prerequisite to the continuity of the lien acquired through such proceedings. Waples on Attachment and Garnishment, § 615; Drake on Attachment, § 290. After perfection of the attachment lien by judgment, a writ of fieri facias is inapplicable; the res being already in court actually or constructively. The proper writ is venditioni exponas. Waples on Attachment, §§ 908, 909. Where the attaching officer, either before or after judgment, by direction of the plaintiff or otherwise, abandons the possession of the attached property, actually or constructively, the lien is dissolved. 3 A. & E. Enc. of Law (2d Ed.) p. 240. Moreover, any act of the plaintiff which discloses an intention on his part to abandon the lien will work a dissolution. 3 A. & E. Enc. of Law (2d Ed.) p. 239. If that which is attached consists of shares of stock, there is in contemplation of law a constructive seizure and possession as effective as if the thing attached were tangible and the possession actual. Fletcher on Corporations, § 3144. Seizure of certificates is, of course, not essential to effective attachment of shares of stock. Fletcher on Corporations, p. 4851.

[3] The possession of the attached shares is, in contemplation of law, still in the Virginia court, unless by some act of the plaintiff or those claiming through or under it such possession has been terminated. If, in contemplation of law that possession still continues, the obvious duty of the trustee, who became a party to the Virginia attachment proceedings, is to ask leave of the Virginia court to pay from the proceeds of sale of the shares of stock into the registry of the Virginia court the sum of money needed to satisfy the Virginia judgment, together with interest and costs, and to ask the court thereupon to surrender its constructive possession of the shares, to the end that he may perfect the title to the shares sold by him through the protective committee.

If, on the other hand, the constructive possession by the Virginia court of the shares of stock attached has ceased, it is because of some act done by it, or by those who were entitled to the benefit of the attachment proceedings. The record discloses no act looking to that end, unless it be the failure on the part of the judgment plaintiff or by those claiming under it to object to the sale of the shares by the trustee, or unless it be the affirmative act of such persons in seeking an

adjudication of their respective rights by this court. By reason of their consequences, those acts should not, of course, be held to have that effect, unless they are unequivocal, for the termination of the possession by the Virginia court would, as we have seen, in legal effect dissolve the attachment and terminate the lien.

The position here taken by the claimants to the fund, however, is neither that the constructive possession of the shares is still retained by the Virginia court nor that such possession was unconditionally terminated. They contend that the legal effect of the acts stated was to transfer the lien from the res to the fund, and that their respective rights in and to the fund should be here determined. But the proof of claim of the Job Company, upon which in this court all the rights of the alleged assignees of the Virginia judgment depend, "claims the benefit of the liens of said attachment," not of an equitable lien arising through acts of the parties out of the destruction of the attachment lien. The position taken by it in answer to the trustee's petition for instructions with respect to depositing the Empire shares under the stockholders' protective agreement was that the trustee should so participate in that agreement, provided its lien "is subrogated to the proceeds which the trustee will receive." The position so taken is not, as I understand it, unequivocal. It fails to make clear whether the judgment plaintiff's consent was conditioned upon a transfer of the lien from the res to the fund, or upon the "subrogation"—that is, the substitution—in Virginia of the fund for the res. The terms employed indicate the latter.

Moreover, no application, so far as the record here shows, has been made to the Virginia court to obtain formal release of its custody and possession of the attached shares. The acts done by the attaching creditor are not, in my opinion, adequate to show either that it has terminated the possession of the Empire shares by the Virginia court or done any acts which would estop it from denying that it has terminated such possession. Consequently, I am unable to find that there has been any termination of the possession of the Empire shares by the Virginia court. True, the three claimants to the fund have, at one time or another, sought to obtain the fund directly from this court, although Hazelgrove now seeks to have the fund paid by the trustee into the registry of the Virginia court. Yet, in view of the fact that there are before this court three alleged assignees of the fund, two for the whole thereof, one of whom only

recently learned of the proceedings here, I think there can be no assurance either that all the assignees are here or that the action of those here appearing is, in fact, sufficient to work a transfer of the lien from the res to the fund, even if such transfer be legally possible under the circumstances here existing.

For the foregoing reasons, and because the trustee, pursuant to an order of this court made on the 19th day of October, 1921, in this cause, became by intervention a party to the Virginia proceedings, the matter will be remanded to the referee, with directions to order the trustee to petition the Virginia court for leave to pay into the registry of that court, from the proceeds of sale of the shares of stock, the amount of the judgment, with interest and costs, and, upon his so doing, to surrender its constructive possession of the shares of stock sold by the trustee pursuant to the order of this court.